# Com. *v.* George Schmous, Appellant.

*Murder—Verdict—Polling of jury—Practice, Oyer and terminer.*

Where a verdict of murder of the first degree has not only been announced in due form, but recorded and affirmatively responded to by the entire jury, the separate answers, given thereafter, if not in harmony with the previously recorded verdict, may be treated as mere surplusage.

In such a case, where each juror is asked to say whether the defendant is guilty of the felony wherewith he stood charged or not guilty, and each answered " guilty," it seems that the answers referred to were intended and understood to be in full affirmance of and therefore in harmony with the verdict as previously announced by the jury through their foreman, recorded and assented to by all of them.

Argued March 5, 1894.    Appeal, No. 83, Oct. T., 1894, by defendant, for judgment of O. & T. Allegheny Co., Sept. T., 1893, No. 11, on verdict of guilty of murder of the first degree. Before Sterrett, C. J., Green, Mitchell, Dean and Fell, JJ. Affirmed.

Indictment for murder.   Before Slagle and Collier, JJ.

On the trial the evidence tended to establish the following facts : Defendant's wife and two children were found dead in their house in the morning after a quarrel between defendant and his wife the evening before.   All of those murdered had received several wounds upon the head, apparently inflicted with some heavy, blunt instrument.   A fire had been started under the bed.

When defendant was being taken from the coroner's office to the jail he said to the officer : " I could not help it, she made me do it."

The court excluded the following offer of testimony (it having previously been shown that Frank Kellner, Sr., lived in the house next to that of defendant), viz.: " That the said Frank Kellner, Sr., is of insane mind ; that he said Mrs. Catherine Schmous was a ' devil,' and he had threatened to kill her on many occasions ; that the said Kellner had a habit of burning everything he got his hands on ; that the said Kellner had a habit of taking the keys from the doors of the house, as well as from other neighbors ; that after this occurrence, he, the said Kell-

ner, has said ' the devil is out of the road now ; ' that the said
Kellner often slept out of the house at night, occupying his
time at all hours of the night by driving nails in posts, and
would say, in so doing, that he had ' killed another devil.' " [5]

The court, after defining murder, charged as follows, by
SLAGLE, J.:

" There is no suggestion in the evidence that this murder
[killing ?] was lawful, and therefore the presumption of mali-
cious killing arises, and the presumption that the crime was
murder.

" 1. Nor is there any evidence which would tend to reduce
the crime below that grade, and therefore in this case the kill-
ing was undoubtedly murder, and it is not necessary for me to
describe any of the lesser offences. But the presumption aris-
ing from an unlawful killing rises no higher than that of mur-
der at common law, or murder in the second degree under our
statutes, and in order to find the higher grade, that is, murder
in the first degree, it is necessary that the commonwealth should
show, or it should appear in the evidence, that it came within
the description of murder in the first degree as given by the
statutes.

" It is true that in this case there was evidence of an attempt
at arson, but probably the murder was not the result of the ar-
son, but the arson was an attempt to cover up the murder. That
would appear to be indicated by the testimony, and therefore
probably it would not be brought within the description of mur-
der in the first degree by reason of the attempt to perpetrate
arson ; nor is there any other of these high crimes which ap-
pear by the evidence to have been committed at this time, the
result of which was this killing. If this defendant was guilty
of murder in the first degree (if he was guilty at all), it would
be that kind, willful, deliberate and premeditated killing, and
this, as I have said, the commonwealth must show. In other
words, they must produce evidence that the killing was willful,
deliberate and premeditated in order to justify a verdict of mur-
der of the first degree, but this need not be by express or posi-
tive testimony. Like every other fact in the trial of this cause,
like every other inference from facts, it may be shown by cir-
cumstantial evidence, by the circumstances surrounding the
case, and in the majority of cases of murder in the first de-
gree, it can only be shown by the surrounding circumstances.

" Now, in order to bring the case within this clause of the act, it has been said by one of our judges, following the same idea : ' It therefore lies on the commonwealth to satisfy the jury of those facts and circumstances which indicate the deliberate intention to kill, and the cool depravity of heart and conscious purpose which constitute, as before stated, the crime of murder in the first degree.' And he further describes this class of murder in the first degree as follows : ' Many cases have been decided under this clause, in all of which it has been held that the intention to kill is the essence of the offence. Therefore, if an intention to kill exists, it is willful ; if this intention be accompanied by such circumstances as evidence a mind fully conscious of its own purpose and design, it is deliberate ; and if sufficient time be afforded to enable the mind fully to frame the design to kill, and to select the instrument, or to frame the plan to carry this design into execution, it is premeditated. The law fixes upon no length of time as necessary to form the intention to kill, but leaves the existence of a fully formed intent as a fact to be determined by the jury from all the facts and circumstances in the evidence.'

" So that in this case, as I have said, the evidence tending to show this willful, premeditated intention, is entirely circumstantial. It may be gathered from the character of the killing ; all the surroundings ; the kind of weapons used ; the number of blows struck. A person might strike a single blow without having any intention to kill, or follow it up with a number of blows, which would be indicative of the intention. Where two or more persons are killed at the same time, that would be a strengthening of the fact. They could not all be killed at once, from an impulse, but it must have taken some time ; one following the other. There is no evidence to show which one of these persons was killed first. The fact that there were three killed by numerous blows upon each, with a ferocity which is unusual, and would not exist except where there is an intention to kill, would strongly indicate a willful, deliberate and premeditated intention to kill, and would justify your finding the party who committed that crime guilty of murder in the first degree. This is all that I need say to you as to the nature of the offence.

" The main question here, and the one which has been fought

in the trial of this case, is not so much the fact of this being a murder,—an evident murder of the first degree,—but the question of whether or not the prisoner at the bar is the person who perpetrated that crime. Now, as to this, the testimony has been gone over very fully by counsel on either side, and therefore it is not necessary for me to undertake to recite it to you again. Here again, we have to a certain extent a question resting upon circumstantial evidence. The commonwealth claims that it has fixed this crime upon the prisoner at the bar by evidence of a circumstantial character which is undoubted. There has been, at times, great discussion among lawyers and judges as to the force of circumstantial evidence. In some cases, they have said circumstantial evidence is more satisfactory than direct evidence, because it is more difficult to plan a series of circumstances tending to show guilt than it is to swear directly to the fact, and it is not so liable to the perpetration of perjury.

" On the other hand, it has been said it has less weight than positive proof, and there are reasons for both sides. The fact is that the two classes of testimony are equally reliable, equally liable to error. In one case, a man may swear positively to the fact, and be perfectly honest in so doing, and still be mistaken. He may be mistaken as to the identity of the person, may be unable to see clearly. Or, he may be false and prefer an improper charge against a person. The same may be said of circumstantial evidence. The witnesses may imagine those things which are false, or draw improper inferences, and they are all, like everything human, liable to err, but that is no reason why they should be disregarded.

" 2. You have heard on the part of counsel for the defence a number of cases which he read to you where mistakes were made by confession, whereas the law books, notwithstanding all these mistakes, say that it is the strongest evidence that can be produced. Where the witnesses are reliable and the party, without any influence being brought upon him, confesses his guilt, there can be nothing more satisfactory to the jury. At the same time, as he showed you, even confessions can be mistaken, yet that is no reason why you should disregard an admission of guilt. So, positive evidence has been incorrect or mistaken, and people have been punished unjustly for that reason ; still, that is no reason why you should disregard all posi-

tive evidence. The same rule applies to circumstantial evidence. This case especially, one of this magnitude, one of so much horror, naturally raises a feeling in the minds of the persons to whom it is related that they should very carefully weigh the testimony, and the rule of law upon that point is this : That the circumstantial evidence must tend to fix the crime upon the party charged to such an extent as to exclude any other reasonable hypothesis than his guilt, and, as I have said, where the circumstances also satisfy you that he was the party who committed the offense.

" 3. In this connection, the counsel for the defense having read those cases on the subject of circumstantial evidence and of confessions, I wish to read to you a few words from the opinion of Chief Justice GIBSON in a case in which the same sort of a plea was made, and especially as it gives the idea more fully than I have given it to you probably, of the effect of circumstantial evidence [Harman v. Com., 4 Pa. 269] :

" ' 4. The only difference between positive and circumstantial evidence is that the former is more immediate and has fewer links in the chain of connection between the premises and conclusion, but there may be perjury in both. A man may as well swear falsely to an absolute knowledge of a fact as to a number of facts, by which, if true, the question of innocence or guilt is solved. No human testimony is superior to doubt. The machinery of criminal justice, like every other production of man, is necessarily imperfect, but you are not therefore to stop its wheels. Because men have been scalded to death, or torn to pieces by the bursting of boilers, or mangled by wheels on a railroad, you are not to lay aside the steam engine. Innocent men have doubtless been convicted and executed on circumstantial evidence ; but innocent men have sometimes been convicted and executed on what is called positive proof. What then ? Such convictions are accidents which must be encountered, and the innocent victims of them have perished for the common good as much as soldiers who have perished in battle. All evidence is more or less circumstantial, the difference being only in the degree, and it is sufficient for the purpose when it excludes disbelief,—that is, actual and not technical disbelief, for he who is to pass on the question is not at liberty to disbelieve as a juror while he believes as a man. It is enough that

his conscience is clear. Certain cases of circumstantial proofs to be found in the books, in which innocent persons were convicted, have been pressed on your attention. These, however, are few in number and they occurred in a period of some hundreds of years, in a country whose criminal code made a great variety of offenses capital. The wonder is that there have not been more. They are constantly resorted to in capital trials to frighten juries into a belief that there should be no conviction on merely circumstantial evidence. But the law exacts a conviction whenever there is legal evidence to show the prisoner's guilt beyond a reasonable doubt, and circumstantial evidence is legal evidence. If the evidence in this case convinces you that the prisoner killed her child, although there has been no eyewitness of the fact, you are bound to find her guilty.'

"And that is equally applicable to this case. As I said, I do not propose to go over all the testimony. You have the evidence to the fact that the prisoner at the bar was in this house at the time of the commission of the offence; that it was therefore within his power to commit the offence; you have the circumstances attending the discovery of the crime; what was done by him and by others; the condition of the bodies; their location in the house; the circumstances of their life together, etc., and all of these either tend one way or the other —to establish the fact of his having committed the offence, or to exonerate him, and you will give full weight to all the evidence, and if, upon full consideration, you are not satisfied beyond any reasonable hypothesis of his innocence, you should find him guilty. If you are led irresistibly to the conclusion that it was he who committed the offence, you should find him guilty."

Defendant's points were as follows:

"1. Where the commonwealth asks a conviction upon circumstantial evidence, such evidence must point with steady and unerring aim to the guilt of the accused, beyond all reasonable doubt, and must be inconsistent with and irreconcilable to any reasonable hypothesis of his innocence before the jury can convict him." Affirmed.

"2. To convict on circumstantial evidence, each fact in the chain ought to be proved by distinct, independent and competent testimony; each should be consistent with the other, and

with the main fact sought to be established; the inferences to be drawn should be natural and reasonable, and to a moral certainty, certain ones; and the hypothesis of guilt must be such as to exclude every reasonable or fair theory of innocence." Affirmed.

" 3. The burden of proving every element of any offence charged is upon the commonwealth, and never shifts or changes." Affirmed.

" 4. If the jury, after a calm, full and passionless consideration of all the evidence submitted, have a reasonable doubt of defendant's guilt, it is their duty to give the prisoner the benefit of that doubt and acquit him." Affirmed.

" 5. If, after a full and careful consideration of all the evidence submitted, the jury have a reasonable doubt of any matter essential to constitute the crime charged, that reasonable doubt belongs to the prisoner, and he should be acquitted." Affirmed.

" 6. A reasonable doubt may be compared to that state of mind in a reasonable man, who, in the transaction of any of the affairs of ordinary life, is driven to pause, hesitate and doubt before coming to a conclusion. *Answer:* This is refused, because any reasonable man pauses, hesitates and doubts before coming to a conclusion upon any matter of importance. Whatever hesitation you may feel or doubts you may have at first sight, if, after a calm, careful and full consideration of all the evidence, your minds settle to a clear and firm conviction of guilt, that is all the law requires. If, after such consideration of the evidence, a reasonable doubt still remains, the defendant is entitled to the benefit of such doubt and should be acquitted. The reasonable doubt must, however, be serious and substantial; not a mere possibility of a doubt; or, in the language of Judge AGNEW: 'In deciding upon the case, or upon any material part of it, it is the duty of the jury to give the prisoner the benefit of any reasonable doubt arising out of the evidence which prevents them from coming to a satisfactory conclusion, but this doubt must fairly arise out of the evidence, and not be merely fancied or conjured up. A jury must not raise a mere fanciful or ingenious doubt to escape the consequences of an unpleasant verdict. It must be an honest doubt—such a difficulty as fairly strikes a conscientious mind

and clouds the judgment. If the mind be fairly satisfied of a fact, on the evidence, as much so as would induce a man of reasonable firmness and judgment to take the fact as true and to act upon it in a matter of importance to himself, it would be sufficient to rest a verdict upon it."

" 7. The defendant is entitled to the benefit of any reasonable doubt that may exist in the mind of any one of the jurors who try him, after a calm, full and passionless consideration of all the evidence submitted. *Answer:* This is affirmed, because the law requires the concurrence of the entire jury in a verdict, and each one must be convinced beyond a reasonable doubt in order to find the defendant guilty."

" 8. It is the duty of any one of the jurors in whose mind, after a careful consideration with his fellow jurors of all the evidence, a reasonable doubt exists as to any essential element of the crime charged, to refuse to convict the defendant." Affirmed.

" 9. It is the duty of a majority of a jury to yield to a verdict of acquittal, rather than that the conscience of a minority of the jury be violated by acquiescing in a verdict of guilty. *Answer:* This is refused. Each juror is bound to act in accordance with his own conscience, and one who is convinced of the defendant's guilt beyond a reasonable doubt is bound to act upon that conviction. It is the duty of each to consider the views of the others and endeavor to reconcile their opinions in accordance with the truth of the case."

" 10. Evidence of good character is to be regarded as a substantial fact, like any other tending to establish the defendant's innocence, and ought to be so regarded by the court and jury." Affirmed.

" 11. Evidence of good character is not a mere make-weight thrown in to assist in the production of a result that would happen at all events, but it is positive evidence, and may of itself, by the creation of a reasonable doubt, produce an acquittal." Affirmed.

" 12. A failure on the part of the commonwealth to produce a competent witness who was present in the house at the time of the commission of the crime, and had the means of observing all that took place, is a strong inference against the theory

set up by the prosecution, and such failure virtually amounts to substantive testimony of the truth of the defendant's evidence, denying the crime. *Answer :* This is refused. It is not a correct statement of the law. But in this case there is no indication in the testimony that any such witness was available to the commonwealth unless it be in the statement of the defendant to the effect that his son, seven or eight years of age, was present and awakened him out of his sleep, and that witness was as available to the defence as to the prosecution." [2]

Verdict, guilty of murder of the first degree and judgment thereon.

Defendant thereupon appealed.

*Errors assigned,* were (1) the action of the court in overruling motion in arrest of judgment, for reasons stated in opinion of the Supreme Court, quoting them; (2) answer to 12th point, quoting point and answer; (3) in overruling motion in arrest of judgment when defendant at bar for sentence plead insanity and offered corroborative affidavits by doctors to the effect that defendant's mental condition approached imbecility or dementia and that he could not appreciate the meaning of a death sentence; (4) "the court erred in charging the jury as indicated in charge numbers 1, 2, 3 and 4;" (5) ruling on evidence, quoting offer but not bill of exceptions.

*Frank I. Gosser,* for appellant, cited as to validity of verdict: Whart. Cr. Pl. & Pr., 9th ed., §§ 750, 752; Kerr's Homicide, 596; Williams v. State, 60 Md. 402; Ford's Case, 12 Md. 514; Com. v. Buccieri, 153 Pa. 535.

*Clarence Burleigh,* for appellee, cited: Abbott's Trial Brief, §§ 835, 836, 842; Ford v. State, 12 Md. 546; Whart. Cr. Pl. & Pr. § 720; Labar v. Koplin, 4 Comstock, 550; Laros v. Com., 84 Pa. 200; Com. v. Buccieri, 153 Pa. 554.

OPINION BY MR. CHIEF JUSTICE STERRETT, July 11, 1894:

We have not been furnished with any of the evidence adduced on the trial of this case, except the defendant's own testimony. As therein given, his own version of what occurred on the night his wife and two children were killed points to the

conclusion that they were brutally murdered. The only serious question that arises thereon is whether he himself was the guilty agent. It appears, however, from the opinion of the court, overruling the motion for a new trial, etc., that other facts and circumstances, testified to by other witnesses, were quite sufficient to justify the conclusion embodied in the verdict. Indeed, it is practically conceded by his counsel that the testimony introduced by the commonwealth, if believed by the jury, was quite sufficient to warrant them in finding the defendant guilty of murder of the first degree. In view of the evidence, the case was clearly for the jury. It involved questions of fact which were exclusively for their consideration; and to them it was properly submitted in a clear and impartial charge, defining the crime of murder, and the different degrees thereof, and correctly stating the character of the proof necessary to justify a conviction of murder of the first degree.

Twelve carefully prepared points for charge—suggested by the evidence—were submitted by the learned counsel for defendant, all of which, except the 6th, 9th and 12th, were affirmed without any qualification. In the points thus affirmed, every phase of the case was so clearly presented that the jury could not mistake their duty in considering and disposing of the questions before them. For example they were instructed, inter alia, that, " the burden of proving every element of any offence charged is upon the commonwealth and never shifts or changes;" that " where the commonwealth asks a conviction upon circumstantial evidence, such evidence must point with steady and unerring aim to the guilt of the accused, beyond a reasonable doubt, and must be inconsistent with any reasonable hypothesis of his innocence, before the jury can convict him;" and that, " evidence of good character is to be regarded as a substantial fact, like any other tending to establish defendant's innocence, and ought to be so regarded by the court and jury."

It is unnecessary to notice the remaining six affirmed points further than to say that they are similarly appropriate and instructive to the jury. There is no complaint as to two of the points refused. They were rightly answered in the negative. For reasons given in the learned judge's answer to the 12th point, it was also rightly refused; and hence the second specification, relating thereto, may be dismissed without further comment.

The first specification of error is based on the erroneous as-
sumption that " The verdict rendered by the jury was a nullity."
There is nothing upon which to base this assumption except
the answer elicited by the unwarranted polling of the jury after
the verdict had been regularly rendered, recorded and affirma-
tively responded to by the jury. As thus recorded and assented
to, the verdict is : " That they find the defendant George
Schmous (he being present in open court) guilty of the felony
wherewith he stands charged, to wit: guilty of murder in the
first degree, and so they say all."

What actually occurred at the time is concisely and chrono-
logically stated by the learned trial judge in his opinion over-
ruling the motion in arrest of judgment, thus : " The jury having
been brought into court, the prisoner being in the dock, was
directed to stand up, and the jury was then directed to look
upon the *prisoner*. The clerk, addressing the jury, said : ' Gen-
tlemen of the jury have you agreed upon your verdict? ' to
which each answered, ' We have.' ' Who shall answer for you,'
to which each answered, ' Our foreman.' The clerk then said :
' In this issue joined between the commonwealth and George
Schmous, the prisoner at the bar, how say you, is he guilty of
the felony wherewith he stands charged, or not guilty ? ' To
which the foreman answered, ' We find him guilty of murder
in the first degree.' The clerk then handed the indictment to
the court, made the entry on minutes and then said to the jury :
' Hearken to your verdict as the court has recorded it; in this
issue joined between the commonwealth and George Schmous,
the prisoner at the bar, you say you find him guilty of murder
of the first degree, and so you say all ? ' to which each answered,
' we do.' After this was done counsel for defendant asked a
poll of the jury, which being granted, the clerk again put to
each juror separately the question : ' In this issue joined be-
tween the commonwealth and George Schmous, the prisoner
at the bar, how say you, is he guilty of the felony wherewith
he stands charged or not guilty ? ' to which each answered,
' Guilty.' No objection was made to the answer by anyone.
Counsel for defendant claims that the verdict of murder in the
first degree, as so rendered and recorded, was nullified by the
failure of each juror to specify the degree in his answer upon
the polling."

According to the well settled practice in the oyer and terminer, the request to poll the jury came too late, and should have been denied. The verdict in due form had already been not only announced, but recorded and affirmatively responded to by the entire jury. The separate answers, given after all that was done, if not in harmony with the previously recorded verdict may be treated as mere surplusage: but, we are satisfied, as was the learned trial judge, that the answers referred to were intended and understood to be in full affirmance of, and therefore in harmony with the verdict as previously announced by the jury through their foreman, recorded and assented to by all of them. There is nothing in the alleged error that would warrant a reversal of the judgment.

The second specification has already been disposed of. As to the third assignment of error, there is nothing in the record to warrant the conclusion that the court either entertained or should have entertained any doubt as to defendant's sanity when he was called for sentence; and hence there was no error in disregarding his so-called plea: Com. v. Buccieri, 153 Pa. 535, 554.

The fourth specification is not according to rule: but, waiving that, we have examined the portions of the charge therein referred to, and find nothing in either of them that can be regarded as erroneous.

The offer recited in the last specification was rightly excluded.

We have examined the record with that care which the gravity of the judgment demands, and have failed to find any substantial error therein. A fair and impartial trial, in which defendant's legal rights were properly respected, appears to have been accorded to him.

The judgment of the court of oyer and terminer is therefore affirmed, and it is ordered that the record be remitted to said court for the purpose of execution.