Commonwealth ex rel. Ryan, Appellant, *v.* Banmiller.

Argued May 23, 1960. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*Maxwell P. Gorson*, for appellant.

*William W. Caldwell*, Assistant District Attorney, with him *Martin H. Lock*, District Attorney, for Commonwealth, appellee.

OPINION BY MR. CHIEF JUSTICE JONES, June 29, 1960:

This is an appeal from an order of the Court of Common Pleas of Dauphin County denying petition for a writ of *habeas corpus*. The relator is confined in a State penitentiary where he is serving a life sentence for his conviction of murder in the first degree. His trial was had in the Court of Oyer and Terminer and General Jail Delivery of Dauphin County before Honorable W. C. SHEELY, President Judge of the Fifty-First Judicial District, specially presiding. The ver-

dict of murder in the first degree with the penalty fixed at life imprisonment was read by the forelady of the jury in open court in the presence of the defendant. At his counsel's request, the jury was promptly polled. Following that, the verdict was formally recorded by the court and declared so to be by the clerk. Subsequently, sentence in accordance with the jury's verdict was duly imposed by the court. No appeal was taken.

In support of the petition for a writ of *habeas corpus,* which was filed five years after relator's conviction and sentence to life imprisonment, he alleges that when the jury was polled two of its members did not answer in the form in which they should have in order to evidence their assent to the verdict as announced by the forelady. The contention is without merit. Relator's counsel entirely misconceives the purpose to be served by the polling of a jury. The verdict is what is announced to the court by the foreman (or forelady as the case may be) after the clerk's interrogation of the jury as to whether a verdict has been agreed upon. The purpose of the poll is to give any juror, who may possibly have been under pressure from other members of the jury to acquiesce in the verdict, an opportunity to speak out and declare to the court that the verdict as announced by the foreman was not voluntarily joined in by the answering juror. What actually took place in the courtroom when the jury returned to announce its verdict is clearly set forth in the opinion of Judge SHEELY, who sat specially in the Court of Common Pleas in Dauphin County for the purpose of passing on the relator's present petition for a writ, as follows:

"THE CLERK [addressing the jury]: Be seated please.

"Florence S. Miller, please stand. In the case of the Commonwealth versus Joseph Michael Ryan, to

No. 38 Oyer and Terminer, January Sessions, 1954, on the charge of murder, how do you find?

"JUROR NO. 1: Guilty of murder in the first degree, with recommendation of life imprisonment.

"THE CLERK: Carrie Wenk, in the case of Commonwealth versus Joseph Michael Ryan to No. 38 Oyer and Terminer, January Sessions, 1954, on the charge of murder, how do you find?

"JUROR NO. 2: All of whom having been sworn—

"THE COURT: Just the lower part, please.

"JUROR NO. 2: Just the lower part, pardon me. They find the defendant guilty of murder in the first degree with the recommendation of life imprisonment.

"THE CLERK: Adam J. Hain. In the case of Commonwealth versus Joseph Michael Ryan to No. 38 Oyer and Terminer, January Sessions, 1954, on the charge of murder, how do you find?

"JUROR NO. 3: On March 26, 1954, that they have found the defendant guilty of murder in the first degree with the recommendation of life imprisonment.

"The polling of the jury continued with the remaining jurors answering (with some slight variations) 'guilty of murder in the first degree with the recommendation of life imprisonment.' At the conclusion of the polling of the jury the Court directed that the verdict be recorded. After the verdict was recorded the clerk directed the members of the jury to stand and said: 'Ladies and gentlemen of the jury, harken to your verdict as the court hath it recorded. You say that in the case of the Commonwealth versus Joseph Michael Ryan to Number 38 Oyer and Terminer, January Sessions, 1954, on the charge of murder, we the jury do say the 26th day of March, 1954, that we find the defendant guilty of murder in the first degree, with the recommendation of life imprisonment. And so say you all?' The jurors replied 'We do.' "

The opinion for the court below then explains quite understandably how Jurors Nos. 2 and 3 happened to use the particular language they did in answering the clerk's question when they were polled as to the verdict:

"In Dauphin County, as in many other counties in the Commonwealth, it is customary to furnish the jury with a verdict slip upon which the jury notes the verdict and which is signed by the foreman: See Commonwealth v. Minoff, 363 Pa. 287, 298 (1959). When the jury returns with its verdict this slip of paper is handed to the trial judge who examines it to determine if the verdict is in proper form and is complete. If the verdict is in proper form the slip is handed to the clerk who proceeds to take the verdict of the jury.

"The verdict slip in this case contained the caption of the case; the defendant's plea of not guilty, the names of the jurors and alternates, and the words: 'all of whom having been sworn or affirmed, do say the 26th day of March, 1954, that they find the defendant', to which the jury added the words 'guilty of murder in the first degree with the recommendation of life imprisonment.' The slip was signed by the foreman [forelady] and the time of 8:32 P.M. was noted.

"It is quite apparent that when the jury was polled Juror No. 2 and Juror No. 3 had before them the verdict slip and that they attempted to read from it. Juror No. 2 began: 'All of whom having been sworn' when she was stopped by the court with the words: 'Just the lower part, please.' She then said: 'Just the lower part, pardon me. They find the defendant guilty of murder in the first degree, with the recommendation of life imprisonment', in the exact words of the verdict slip and in the exact words of the Forelady in originally announcing the verdict. Juror No. 3 varied the words slightly and said: 'On March 26, 1954, that they

have found the defendant guilty of murder in the first degree with the recommendation of life imprisonment.' "

The opinion of Judge SHEELY applies the law to the foregoing facts so cogently that we can do no better than quote therefrom the following excerpts whereon the order will be affirmed:

"In Commonwealth v. Bucciere, 153 Pa. 535, 553 (1893) it was said: 'The prisoner has a right to a poll of the jury to ascertain whether each member concurs in the verdict; the exact words used by a juror in answering are not material, if they indicate clearly the assent of the individual mind to the verdict.'

"When a jury is polled it is the duty of the Court to determine whether their answers do clearly indicate the assent of their individual minds to the verdict before the verdict is accepted and directed to be recorded. The assent or lack of assent of the individual jurors is not to be determined solely on the words used by the juror. The demeanor and appearance of the juror as well as all of the surrounding circumstances must be considered. A juror might verbally indicate assent to the verdict while his manner and appearance might indicate the contrary. If the answer of any juror is not clear, or if it is questioned, the juror may be further interrogated before the Court determines whether or not to accept the verdict.

"In the present case neither the defendant nor his counsel raised any question concerning the answers of the two jurors in question or requested that the jurors be interrogated further. It is clear that they were satisfied that the jurors did assent to the verdict. The Court was likewise satisfied from the manner of the jurors and all of the circumstances that their answers did indicate their assent to the verdict as stated by their foreman [forelady], and directed that the verdict be recorded. By reading from the verdict slip which

had been previously read by their forelady as the verdict of the jury these jurors clearly indicated their full assent to the verdict as written and as announced. It was clear that they read from the verdict slip to insure accuracy in stating the verdict. See Commonwealth v. Schmous, 162 Pa. 326, 337 (1894) where the foreman announced a verdict of guilty in the first degree which was recorded and assented to by all jurors. Upon a subsequent poll of the jury each juror answered merely 'guilty' without specifying the degree. The Court was satisfied that the answers were 'intended and understood to be a full affirmance of, and therefore in harmony with, the verdict as previously announced by the jury through their foreman, recorded and assented to by all of them.'

"Any doubt as to the state of mind of the jurors was dispelled after the clerk asked the jurors to 'harken to your verdict as the Court hath it recorded,' and read the verdict concluding with the words 'and so say you all,' to which all of the jurors replied: 'We do.' By their answer to the clerk's question, after the verdict was recorded, the jurors collectively and individually indicated their assent to that verdict."

Order affirmed.

------

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

When Juror No. 2 (Mrs. Wenk) was polled, she did not announce how she had voted. She began to read from the verdict slip: "All of whom having been sworn . . ." She was then directed by the Judge to read: "Just the lower part, please." Whereupon, Mrs. Wenk said: "Just the lower part, pardon me. They find the defendant guilty of murder in the first degree with the recommendation of life imprisonment."

It is as obvious as the roof on the courthouse that Mrs. Wenk was not responding to a poll. She was simply reading what was presented to her. She in no way specified how she voted. In fact she said: *"They find."* It is, of course, possible that the verdict slip reflected her vote, but the record does not establish this with the conclusiveness the law demands. The polling of a jury, especially in so serious a proceeding as a murder trial, becomes a meaningless gesture if the individual juror, when polled, merely parrots what has been dictated and written by someone else.

Juror No. 3 (Mr. Hain), when polled, also spoke in the third person. He said: "On March 26, 1954, that they have found the defendant guilty of murder in the first degree with the recommendation of life imprisonment." Here he clearly was relating what somebody else, "they", had found, not what *he* found.

The Majority Opinion treats this occurrence as of slight legal consequence. I do not regard it as such, nor has this Court in the past looked upon the polling of a jury, especially in a murder case, as a mere empty formality. In the case of *Commonwealth v. Martin,* 379 Pa. 587, decided only six years ago, we ordered a new trial because the trial Judge did not allow the jury to be polled on the supposition that the verdict had already been recorded. Chief Justice JONES, speaking for a unanimous Court, vigorously condemned any indifferent handling of a request for a jury poll. He said: "That brings us to the trial judge's denial of the defendant's request that the jury be polled. The reason given by the court for its refusal of the request was that it had come too late. However, as we view the attending circumstances, the request was still timely when made and should, therefore, have been granted. *The action of the court in such regard worked a denial of a right of the accused so fundamental as to re-*

*quire a retrial even though, as clearly appears from the record, the trial was otherwise markedly free from error and the jury's verdict was fully warranted by the evidence. Yet, it is better that the case be tried again than that a precedent impairing a defendant's right to a poll of the jury be engrafted on our criminal procedure."* (Emphasis supplied).

Is the decision of the Court today not establishing a precedent impairing a defendant's right to a poll of the jury? That is, a proper individual poll, not a mere chorusing of what has already been announced?

Chief Justice JONES said further in the *Martin* case: "The right of a defendant to poll the jury which has returned a verdict of guilty against him has been widely recognized and accorded: [citing authorities]. The procedure had its genesis in ancient common law . . . and has long been both approved and uniform practice in this state. [citing numerous cases] . . . Suffice it to say that as early as Walters v. Junkins, supra, Mr. Justice ROGERS recognized for this court that 'there are many cases in the books, of a jury changing their verdict, immediately after they have pronounced it in open court, and before it was received and entered . . . The polling of the jury is the means for definitely determining, before it is too late, whether the jury's verdict reflects the conscience of *each of the jurors* or whether it was brought about through the coercion or domination of one of them by some of the fellow jurors or resulted from sheer mental or physical exhaustion of a juror." (Emphasis supplied).

Is the present Court modifying its position on the seriousness and solemnity of a jury's poll? It would seem so from the language in the Majority Opinion. I wish to disassociate myself from any such modification. I stand on what I agreed to in the *Martin* case, and therefore I dissent from the present Majority Opinion.