526 A.2d 790

**COMMONWEALTH of Pennsylvania**

v.

**Marcellino SANCHEZ, Appellant.**

Superior Court of Pennsylvania.

Submitted March 30, 1987.

Filed June 1, 1987.

Elaine DeMasse, Assistant Public Defender, Philadelphia, for appellant.

Jane C. Greenspan, Assistant District Attorney, Philadelphia, for Com., appellee.

Before BROSKY, DEL SOLE and HOFFMAN, JJ.

HOFFMAN, Judge:

This is an appeal from the judgment of sentence for robbery, aggravated assault, theft, and conspiracy. Appel-

lant contends that the lower court erred when it continued to poll the jurors after it became apparent that the verdict was not unanimous. For the reasons that follow, we vacate the judgment of sentence and remand for a new trial.

Appellant was tried by a jury on the above charges. Following jury deliberations, the foreperson announced that the jury had reached a unanimous verdict and that appellant was found guilty of all charges. Defense counsel then requested that the jury be polled. After the jury was polled, the court recorded a unanimous verdict of guilty on charges of robbery, aggravated assault, theft and conspiracy. Appellant moved for a mistrial on the grounds that one of the jurors had said she found him not guilty. The motion was denied. Appellant was sentenced to a five-to-ten-year term of imprisonment for robbery and a one-to-two-year term of imprisonment for conspiracy, terms to run consecutively. This appeal followed.

██ Appellant contends that the lower court erred when it recorded a unanimous verdict of guilty on all charges because it was apparent that the verdict was not unanimous. We agree. It is well-settled in this Commonwealth that a criminal defendant tried before a jury has the right to a unanimous verdict. *Commonwealth v. Stufflet,* 276 Pa.Superior Ct. 120, 127, 419 A.2d 124, 128 (1980); *Commonwealth v. Pemberton,* 256 Pa.Superior Ct. 297, 301, 389 A.2d 1132, 1134 (1978); *Commonwealth v. Corbin,* 215 Pa.Superior Ct. 63, 65, 257 A.2d 356, 358 (1969). *See also* Pa.R.Crim.P. 1120(b). To ensure that the verdict is unanimous, both parties have the right to poll the jury. *Commonwealth v. Martin,* 379 Pa. 587, 592–93, 109 A.2d 325, 327 (1954); *Commonwealth v. Pemberton, supra.*

> The polling of the jury is the means for definitely determining, before it is too late, whether the jury's verdict reflects the conscience of each of the jurors or whether it was brought about through the coercion or domination of one of them by some of his [sic] fellow jurors or resulted from sheer mental or physical exhaustion of a juror.

*Commonwealth v. Martin, supra,* 379 Pa. at 593, 109 A.2d at 328. If, during the poll of the jury, it becomes apparent that there is no concurrence among them as to the verdict, the court must order the jury to retire for further deliberations. Pa.R.Crim.P. 1120(f). Where, however, "an evasive answer of a juror leaves doubt as to whether he [sic] has assented to the verdict, but his [sic] answers indicate neither involuntariness or coercion, a subsequent answer on further interrogation which indicates *clear and unequivocal assent* will cure any possible defect." *Commonwealth v. Stufflet, supra,* 276 Pa.Superior Ct. at 127–28, 419 A.2d at 128.

Here, the jury was polled as follows:

THE COURT: As your name is called, you answer to your name and if you agree with the verdict, you tell us you do, you say yes; and if you don't, tell us in what respects you do not agree.

JUROR NUMBER ONE: Yes, I do; TWO: Yes, I do; THREE: Yes, I do; FOUR: Yes, I do; FIVE: Not guilty.

Q: Do you agree with the verdict, yes or no?

A: Not guilty.

THE COURT: Just one moment, do you agree with the verdict was the question?

MR. STANSHINE [Defense Counsel]: Judge, she answered the question herself.

THE COURT: Yes, wait a minute, please do not speak with the juror, do you agree with the verdict. Number five?

A: Yeah.

MR. STANSHINE: I ask that she be asked what her verdict is?

THE COURT: Let's proceed now.

N.T. January 15, 1986 at 7. The court then proceeded to poll the remaining jurors, all who indicated that they agreed with the verdict. Following the poll of the jury, the court returned to juror number five:

THE COURT: Juror number five, would you stand up? Do you agree with the verdict as announced?

A: Yes.

MR. STANSHINE: I would ask that the juror be asked.

THE COURT: Please remove the jury.

MR. STANSHINE: She said not guilty also, I ask that she be asked what her verdict is.

*Id.* at 8–9. The jury then returned to the courtroom and the court asked each juror directly how he or she found appellant on each of the charges.

Q: Juror number five, please stand. How do you find the defendant on the charge of criminal conspiracy?

A: Agree.

Q: How do you find him guilty or not guilty? How do you find the defendant on criminal conspiracy?

A: I don't understand what you're saying. I can't hear so good.

Q: Oh, you can't hear so good. All right. The question is, how do you find the defendant on the charge of criminal conspiracy?

A: Yes.

Q: How do you find him?

A: Not guilty.

Q: Not guilty or guilty?

MR. STANSHINE: Objection, she said not guilty, judge.

THE COURT: Just a moment. She said a few things. Will you please not interfere with the court?

Q: Will you please stand again, ma'am. I'm going to ask you how you found the defendant, I want you to answer me guilty or not guilty on each of these charges, do you understand that?

A: Yes.

*Id.* at 12–13. She then stated that she found appellant guilty on all charges and the court recorded the verdict as unanimous.

It is clear from this colloquy that juror number five did not clearly and unequivocally assent to the verdict. When first asked if she agreed with the verdict, she twice responded "Not guilty." Upon further questioning by the

court she stated that she did agree with the verdict. Later, when asked again if she agreed with the verdict she responded "Not guilty." Apparently not satisfied with her answer, the court again asked her whether she found appellant guilty or not guilty and, at this point, she stated that she found him guilty on all charges. At no time did the court stop the polling and order the jury to retire for further deliberations, as required by Pa.R.Crim.P. 1120(f). Instead, the court impermissibly continued to question juror number five until it obtained a response that comported with the responses of the other jurors. As a result, it is unclear whether the guilty verdict accurately reflects the conscience of each and every juror. We conclude, therefore, that the lower court erred in accepting and recording the guilty verdict.

For the above-stated reasons, we vacate the judgment of sentence and remand for a new trial.[1]

Vacated and remanded. Jurisdiction is relinquished.

BROSKY, J., files a dissenting opinion.

BROSKY, Judge, dissenting:

Since I cannot join the majority's disposition vacating appellant's judgment of sentence and remanding for a new trial, I must therefore respectfully dissent. My examination of the record leads me to conclude that Juror No. 5 did render her clear and unequivocal assent to the verdict of guilty. *Commonwealth v. Stufflet*, 276 Pa.Super. 120, 419 A.2d 124 (1980). The totality of the circumstances surrounding the jury poll convinces me that Juror No. 5 voluntarily and unequivocally assented to the guilty verdict even though, in the initial poll, she rendered a vote of not guilty on the conspiracy count. *Commonwealth v. Carter*, 329 Pa.Super. 490, 478 A.2d 1286 (1984).

---

1. Appellant also contends that he was denied his fundamental right to a unanimous verdict from a competent and qualified jury because one of the jurors indicated she had a hearing problem during the poll of the jury. Because of our disposition of the case, we need not reach this issue.

When the jury was initially polled, the trial judge instructed each member to respond "yes" if he or she agreed with the verdict. Juror No. 5's response was "not guilty." (N.T. 7). This, in my view, is non-responsive to the court's inquiry "Do you agree with the verdict, yes or no?" (Id.). Immediately thereafter, the court stated to Juror No. 5, "Just one moment, do you agree with the verdict was the question? . . . . [D]o you agree with the verdict, Number Five?" Juror No. 5 then responded, I think unequivocally, "Yeah." (Id.) Subsequently, the court asked each remaining juror to indicate his/her agreement or disagreement, i.e., a "yes" or "no" response. (N.T. 7–8).

Despite this, appellant's trial counsel, after removal of the jury, insisted that the court once again ask Juror No. 5 "what her verdict is" (N.T. 9). The court then agreed to recall the jury and did ask Juror Nos. 1 through 4 each to render his/her verdict (guilty or not guilty) on each charge. (N.T. 10–12). When the court again asked Juror No. 5 how she found appellant on the charge of criminal conspiracy (guilty or not guilty), the juror responded, "Agree." (N.T. 12).

It is evident that this juror was confused not as to the verdict she wished to render but, rather, as to the appropriate manner in which to respond. The first time around (on the first poll), the juror was asked to render her agreement or disagreement. The second time, the trial court expected a "yes" or "no" response. This is borne out by the fact that Juror No. 5 informed the court that she did not understand what the court was saying because of a hearing problem (N.T. 13).

Juror No. 5 did render a "not guilty" response to the court's query, "How do you find him?". However, because of the foregoing difficulty and confusion, the court once again proceeded to question this juror as follows:

Q. Will you please stand again, Ma'am.

I'm going to ask you how you found the defendant, I want you to answer to me either guilty or not guilty on each of these charges. Do you understand that?

A. Yes.

Q. Okay. The defendant was tried on [sic] charge of criminal conspiracy, how do you find the defendant?

A. Guilty.

Q. How do you find the defendant on robbery?

A. Guilty.

Q. How do you find the defendant on aggravated assault?

A. Guilty.

Q. How do you find the defendant on theft?

A. Guilty.

Q. Now, over again, let's do that again. I want to make sure?

A. Yes.

Q. Are you sure you find the defendant guilty on all these charges?

A. Yes.

Q. You're sure?

A. Yes.

N.T. 11–12.

In light of the foregoing colloquy, I would hold that Juror No. 5's responses to each of the court's queries on each of the charges were manifestly clear and unequivocal. The juror's initially non-responsive or ambiguous replies were later clarified without any vacillation or taint of involuntariness or coercion. *Commonwealth v. Stufflet, supra; Commonwealth v. Carter, supra.*

In *Commonwealth v. Wheeler,* 498 Pa. 374, 446 A.2d 892 (1982), the following jury poll colloquy took place in the trial court:

"THE CRIER: * * * In Bill of Information Number 1467 of March 1979 the defendant, James Wheeler, is charged with murder. To this Bill of Information how do you find the defendant?

JUROR NO. 9: Well, I have to tell the truth. I can't say the man is guilty, but with all the evidence I have to say he's guilty.

THE COURT: Just tell us what you say.

THE CRIER: How do you find the defendant?

JUROR NO. 9: Well—

THE CRIER: May I read the bill back?

THE COURT: Yes, read it back.

THE CRIER: In Bill of Information Number 1467 of March 1979 the defendant, James Wheeler, is charged with murder. To this Bill of Information how do you find the defendant?

JUROR NO. 9: Well, all the evidence points to him so—

THE COURT: Just tell us what is your verdict. Is it guilty or not guilty?

JUROR NUMBER 9: Guilty.

THE CRIER: Is your verdict guilty or not guilty?

JUROR NUMBER 9: I'll say guilty.

THE CRIER: To what degree?

JUROR NUMBER 9: First degree."

*Id.*, 498 Pa. at 378, 446 A.2d at 894–95.

When compared with the colloquy occurring instantly, I would view the *Wheeler* juror's vacillation considerably more pronounced, thus giving rise to the spectre of non-unanimity of the verdict. Nevertheless, our Supreme Court concluded there that Juror No. 9's response, while initially ambiguous, was subsequently clarified by her clear and unequivocal assent to the verdict. I note with interest, moreover, that the trial judge there, as here, asked the subject juror to state her verdict more than once. The Supreme Court found no error there, nor do I here.

I would also be unable to address the merits of appellant's second contention that he was denied his right to a unanimous verdict because of Juror No. 5's indication of a hearing problem. This issue is not properly before the Court because it was not made part of appellant's original post-verdict motion or either of his two supplemental post-verdict motions. *Commonwealth v. Gravely*, 486 Pa. 194, 404 A.2d 1296 (1979); Pa.R.App.P. 302(a) (issues not raised below cannot be considered for the first time on appeal).

Based upon the foregoing reasons, I would affirm the judgment of sentence.