547 A.2d 788

**COMMONWEALTH of Pennsylvania**

v.

**Walter WINSTEAD, III Appellant.**

Superior Court of Pennsylvania.

Submitted June 6, 1988.

Filed Sept. 14, 1988.

484

J. David Farrell, Norristown, for appellant.

Mary M. Killinger, Assistant District Attorney, Norristown, for Com., appellee.

Before MELINSON, HOFFMAN and HESTER, JJ.

HOFFMAN, Judge:

This is an appeal from an order denying appellant's petition under the Post Conviction Hearing Act (PCHA), 42

Pa. C.S.A. §§ 9541–9551. Appellant contends that counsel was ineffective for failing to (1) impeach the Commonwealth's witness with his prior inconsistent statements by using the notes of testimony from appellant's first trial; (2) investigate the scene of the alleged crime and object to an inaccurate diagram of the scene used by the Commonwealth during the trial; (3) request a polling of the individual jurors; and (4) move for a mistrial after it was discovered that a juror and the prosecutor had contact during the trial.[1] For the reasons set forth below, we affirm the order of the PCHA court.

Appellant was arrested and charged with robbery, 18 Pa. C.S.A. § 3701, theft by unlawful taking, 18 Pa. C.S.A. § 3921, and criminal conspiracy, 18 Pa. C.S.A. § 903. Appellant was found guilty by a jury of the aforementioned offenses. Appellant filed a motion for a new trial, which was granted. Following his second jury trial, appellant was again convicted on all charges. Post-trial motions were filed, argued, and denied. Appellant was sentenced to an aggregate term of imprisonment of thirty-four-to-sixty-eight-months. No appeal was taken from the judgment of sentence. Approximately two years later, appellant filed a *pro se* PCHA petition. PCHA counsel was appointed and an amended PCHA petition was filed. Following a hearing, appellant's petition was dismissed. This appeal followed.

■ To determine whether counsel rendered ineffective assistance, a two-prong test is employed. First, we must

---

1. Appellant also contends that sentencing counsel was ineffective for failing to perfect an appeal. Following an evidentiary hearing, the lower court found sentencing counsel's testimony that he was never asked to file an appeal to be credible and concluded that appellant had waived his right to appeal. *See* N.T. October 9, 1987 at 9. *See also* PCHA Opinion February 9, 1988 at 20. Appellant, however, challenges the findings of the PCHA court on appeal and alleges that he did not waive his appellate rights. Brief for Appellant at 17–18. The determination of the PCHA court that appellant waived his rights does not preclude us from reviewing the merits of the issues raised on a PCHA appeal. *See Commonwealth v. Jenkins,* 316 Pa.Super. 167, 171, 462 A.2d 847, 849 (1983) (questions raised on appeal from denial of PCHA not "finally litigated" since merits of claims have not been ruled on by appellate court).

ascertain whether the issue underlying the claim of ineffectiveness has arguable merit. *Commonwealth v. Buehl,* 510 Pa. 363, 378, 508 A.2d 1167, 1174 (1986). This requirement is based upon the principle that we will not find counsel ineffective for failing to pursue a frivolous claim or strategy. *Commonwealth v. Parker,* 503 Pa. 336, 341, 469 A.2d 582, 584 (1983). Second, if appellant's claim does have arguable merit, we must determine whether "the course chosen by counsel had some reasonable basis designed to serve the best interests of his [or her] client." *Commonwealth v. Buehl,* 510 Pa. at 378, 508 A.2d at 1171 (citations omitted).

■ If our review of the record reveals that counsel was ineffective, we then must determine whether appellant has demonstrated that counsel's ineffectiveness worked to his or her prejudice. *Commonwealth v. Pierce,* 515 Pa. 153, 159, 527 A.2d 973, 976 (1987). To determine whether appellant was prejudiced, our Supreme Court adopted the test announced by the United States Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Commonwealth v. Pierce,* 515 Pa. at 159, 527 A.2d at 976. Under *Strickland,* to prove that counsel's ineffectiveness resulted in prejudice, an appellant must show that the error was "so serious as to deprive [him or her] of a fair trial, a trial whose result was reliable." *Strickland v. Washington,* 466 U.S. at 687, 104 S.Ct. at 2064. Furthermore, in reviewing claims of ineffective assistance of counsel, it should be noted that counsel is presumed effective, and appellant bears the burden of proving that counsel was ineffective. *Commonwealth v. Petras,* 368 Pa.Super. 372, 375, 534 A.2d 483, 484 (1987).

■ Appellant initially contends that trial counsel was ineffective for not impeaching the Commonwealth's witness, Fred Lynch, an alleged co-conspirator, by confronting him with the notes of testimony from appellant's first trial. Appellant argues that, at the second trial, the witness substantially altered his testimony regarding how the money from the robbery was to be divided among the partici-

pants from the testimony he gave at appellant's first trial. Specifically, appellant argues that had counsel ordered the notes of testimony from the first trial, counsel would have been able to confront the witness with prior inconsistent testimony.

Our first inquiry is to determine if appellant's claim has arguable merit. A review of the record reveals that counsel in fact did cross-examine Fred Lynch about his contradictory testimony. At appellant's first trial, Fred Lynch testified that the money from the robbery was to be split equally among his cohorts. N.T. January 19, 1984 at 63. During appellant's second trial, when the prosecutor questioned him about the plan to divide the profits from the robbery, Fred Lynch responded that after he took his "cut" the remainder would be split between his cohorts. On cross-examination, appellant's counsel questioned Fred Lynch extensively about his conflicting testimony.

[APPELLANT'S COUNSEL]

Q. Say you got money how were you going to divide it?

[WITNESS (FREDDIE LYNCH)]

A. Three ways.

Q. Three equal shares?

A. I would have got the most because I went in the bank.

Q. You would have got the most and that was what the deal was?

A. Yes.

Q. *Do you recall testifying before and saying that it would have been split equally?*

A. Well, it would have been but I would have took more.

Q. Oh, equally is equal except you would have gotten more? That is what you are testifying now?

A. That is what I am saying....

Q. *Isn't the reason you changed your testimony that the last time it didn't make sense when you testified that it was a three way split and that you had the gun and that you went in the bank and that you took*

*all the risks and that you said it was going to be a three way split, equal?*

A. It was going to be a three way split. When you say equal—

Q. *Well, do you recall testifying before that you were going to split it equally?*

A. I probably did say that.

Q. *Which time were you lying? This time or the last time?*

A. I said that. I said it. Okay?

Q. Okay. *Which is the truth? This time or last time?*

A. Well, I would say this is the truth.

Q. You would say this is the truth because you had more time to think about it?

A. Yes.

*Id.* at 62–64 (emphasis added). This exchange convinces us that counsel effectively cross-examined Freddie Lynch about his prior inconsistent statements. Additionally, the witness admitted that he had previously lied. Thus, the purpose perceived by appellant for using the notes of testimony was accomplished by counsel's course of questioning at trial. Moreover, appellant has failed to allege how the introduction of notes of testimony from his first trial would have been more effective than the questioning employed by his counsel. Therefore, because counsel did impeach the witness through the use of prior inconsistent statements, appellant's first claim does not possess arguable merit and we will not deem counsel ineffective. *See Commonwealth v. Parker, supra.*

■ Appellant's second claim of ineffectiveness is that trial counsel should have investigated the scene of the crime and taken steps at trial to have the diagram of the crime scene corrected. Appellant contends that the diagram of the scene of the crime used throughout the trial by the prosecutor was inaccurate and did not correspond to his testimony. At trial, appellant testified that he drove through a driveway near the bank to get to the mall. Because the diagram did not show the existence of a

driveway near the bank, appellant argues that his testimony was discredited by the jury, and thus, he was prejudiced.

As we noted previously, when reviewing an ineffectiveness claim, counsel is presumed to be effective, *Commonwealth v. Norris*, 305 Pa.Super. 206, 210, 451 A.2d 494, 496 (1982), and appellant bears the burden of establishing that trial counsel was ineffective. *Commonwealth v. Jones*, 298 Pa.Super. 199, 205, 444 A.2d 729, 732 (1982). Moreover, in *Commonwealth v. Pettus*, 492 Pa. 558, 424 A.2d 1332 (1981), our Supreme Court noted that,

> Assertions of ineffectiveness in a vacuum cannot be ineffectiveness. Counsel who is alleging ineffectiveness must set forth an offer to prove at an appropriate hearing sufficient facts upon which a reviewing court can conclude that trial counsel may have, in fact, been ineffective. This Court will no longer consider claims of ineffective assistance of counsel in the abstract.

*Id.*, 492 Pa. at 563, 424 A.2d at 1335.

Here, the lower court concluded that without corroborating testimony to support appellant's allegation, appellant failed to sustain his burden of proof. We are constrained to agree. At trial, appellant, on direct examination, used the diagram, without objection, to illustrate his testimony. *See* N.T. January 20, 1984 at 18–19. Appellant did not claim that the diagram was inaccurate until he was cross-examined. *See id.* at 37–38. It is important to note that appellant does not offer any explanation for his delay in claiming that the diagram was inaccurate. Moreover, because appellant did not call trial counsel as a witness at his PCHA hearing, no further proof of counsel's failure to undertake an independent investigation of the area was offered. *See* PCHA Hearing, July 23, 1987 at 46–47. In addition, we note that absent appellant's self-serving testimony, the record and transcripts are devoid of information that would suggest that the diagram was inaccurate. Furthermore, appellant does not point to any specific harm that was suffered as a result of counsel's failure to have the diagram corrected. As noted by the lower court in its opinion, the

issue of the "missing driveway" was inconsequential to appellant's defense because it neither proved nor disproved appellant's involvement in the robbery. PCHA Opinion at 12. Thus, appellant has failed to substantiate his claim that counsel did not investigate the crime scene and that the diagram was inaccurate. Additionally, appellant has not shown how an investigation of the crime scene would have benefited his case. Without further evidence to support appellant's claim, we are left with nothing more than appellant's naked assertion and, on that alone, appellant's claim of ineffectiveness is without merit. *See Commonwealth v. Pettus*, 492 Pa. at 553, 424 A.2d at 1335 (1981).

Appellant next contends that trial counsel was ineffective for not requesting that the jurors be polled separately. Specifically, appellant argues that each juror should have been polled individually on the verdict and, as a result of counsel's inadvertence to request this method of polling, he was denied a fair trial. We disagree.

■ "It is well-settled in this Commonwealth that a criminal defendant tried before a jury has the right to a unanimous verdict." *Commonwealth v. Sanchez*, 363 Pa.Super. 499, 501, 526 A.2d 790, 791 (1987) (citations omitted). *See also* Pa.R.Crim.P. 1120(b). To safeguard against less than a unanimous verdict, either party has the right to request that the jury be polled to ascertain whether the jurors are in agreement with the verdict reached. *Commonwealth v. Pemberton*, 256 Pa.Super. 297, 301, 389 A.2d 1132, 1134 (1978). *See also* Pa.R.Crim.Pro. 1120(f).

> The purpose of the poll is to give any juror, who may possibly have been under pressure from other members of the jury to acquiesce in the verdict, an opportunity to speak out and declare to the court that the verdict as announced by the foreman was not voluntarily joined in by the answering juror.

*Commonwealth ex rel. Ryan v. Banmiller*, 400 Pa. 326, 328, 162 A.2d 354, 355, *cert. denied*, 364 U.S. 852, 81 S.Ct. 99, 5 L.Ed.2d 76 (1960).

■ Here, in evaluating appellant's claim of ineffectiveness of counsel, our first step is to ascertain whether counsel's failure to request that each juror be polled individually has arguable merit. We find that it does not. Our review of the transcripts indicates that after the verdict was announced, counsel asked that the jury be polled collectively and stated that an individual poll of each juror was unnecessary. *See* N.T. January 20, 1988 at 91. The court then proceeded to ask the jury the following questions:

> Q. Members of the jury, will you please state your verdict in regards to the charge of criminal conspiracy?
>
> A. Guilty.
>
> Q. Is everyone unanimously agreed as to the verdict of guilty in regards to the charge of criminal conspiracy?
>
> A. Yes.
>
> Q. If anyone has not agreed would you raise your hand? All right. In regards to the charge of theft of movable property, what is your verdict?
>
> A. Guilty.

*Id.* at 91–92. The court continued to ask the jury similar questions about the verdict for each charge and then entered a statement on the record indicating that when the jury was polled, each juror responded affirmatively to the questions, and the result was that the verdict was unanimous. *Id.* at 93. The purpose of a jury poll is to allow the jury an opportunity before the recording of the verdict, to declare their assent with or dissent from the verdict. *See Commonwealth ex rel. Ryan v. Banmiller,* 400 Pa. at 328, 162 A.2d at 355. The method, (permitting the jury to respond in unison), undertaken by the court in this case accomplished the purpose for polling the jury: it ascertained that the verdict reached by the jury was agreed upon by each member. *See id.* We can find no authority and appellant cites none to support his contention that an individual poll of each juror is required. Moreover, appellant has not alleged that any juror hesitated in announcing his or her assent to the verdict or demonstrated an underlying dissent. Accordingly, because the jury was polled at coun-

sel's request and the result of the poll indicated that the verdict was unanimous, appellant's claim lacks arguable merit and counsel will not be found ineffective for failing to pursue a meritless claim. *Commonwealth v. Parker*, 503 Pa. at 341, 469 A.2d at 584.

Lastly, appellant contends that counsel was ineffective for not moving for a mistrial after it became known that juror number seven and the prosecutor had out-of-court contact. Appellant notes that the prosecutor and juror number seven engaged in an improper conversation during a recess at trial that was witnessed by appellant's father. According to appellant, because of the improper contact between the prosecutor and the juror, he was denied the right to an impartial jury. Thus, appellant contends that he was prejudiced by counsel's failure to move for a mistrial after discovering the improper communication between the prosecutor and the juror.

At the onset, we note that "contact between jurors and other parties, court officers, lawyers and judges is viewed with disfavor." *Colosimo v. Pennsylvania Elec. Co.*, 513 Pa. 155, 161, 518 A.2d 1206, 1209 (1986). The impartiality and integrity of the jury are critical to the proper functioning of our judicial system. *Id.* Not only does the Code of Professional Responsibility, DR 7–108(B),[2] proscribe *ex parte* contact with jurors, but it is also a crime for any person to influence a juror's decision in a case, 18 Pa. C.S.A. § 5102.[3]

---

2. The Code of Professional Responsibility provides in pertinent part as follows:

Disciplinary Rule 7–108(B)–

(1) A lawyer connected therewith shall not communicate with or cause another to communicate with any member of the jury.

(2) A lawyer who is not connected therewith shall not communicate with or cause another to communicate with a juror concerning the case.

3. 18 Pa. C.S.A. § 5102 provides in relevant part:

(a) A person is guilty of a misdemeanor of the second degree if he intentionally interferes with, obstructs or impedes the administration of justice, or with the intent of influencing any judge, juror, witness or court officer in the discharge of his duty.

494

■ In *Commonwealth v. Bradley*, 501 Pa. 25, 459 A.2d 733 (1983), our Supreme Court announced the standard for determining whether contact between a juror and an officer of the court warrants a new trial. *Id.*, 501 Pa. at 27, 459 A.2d at 734. Under *Bradley*, there must be a showing that the contact between a member of the jury and an officer of the court resulted in "a reasonable likelihood of prejudice". *Id.*, 501 Pa. at 36, 459 A.2d at 739.

The courts look with suspicion upon any communications between parties to a suit or their counsel and the jury impaneled to try it; and if such communication is had and it appears that a conversation was had about the suit, or the communication is not explained satisfactorily, it will, in itself, be ground for a new trial. If, when explained, however, it can be seen in the communication nothing was said about the case and nothing was done for the purpose of influencing the mind of the jury, and that the communication or conversation had no influence on the verdict which was reached, no ground exists to set the verdict aside for the reasons that said comment could not have been prejudicial.

*Colosimo v. Pennsylvania Elec. Co.*, 513 Pa. at 165, 518 A.2d at 1211 (citing *Printed Terry Finishing v. City of Lebanon*, 247 Pa.Super. 277, 299, 372 A.2d 460, 471 (1977), quoting *California Fruit Exchange v. Henry*, 89 F.Supp. 580, 588–89 (W.D.Pa.1950)).

■ Here, during a recess in the proceedings on the second day of the trial, juror number seven approached the prosecutor and conversed with her in the corridor of the Court House. N.T. January 19, 1984 at 92, 96. Appellant's father witnessed the encounter and reported it to trial counsel. *Id.* at 92. Counsel, in turn, reported it to the Court and requested that the juror be questioned as to the purpose and content of the conversation. *Id.* The court questioned the prosecutor about her contact with the juror and was informed that the conversation focused on the merits of living in the Upper Dublin area. *Id.* The prose-

cutor assured the court that there was no discussion of the case or anything related to it. *Id.* at 93. Subsequently, juror number seven was asked about his contact with the prosecutor and he confirmed that the conversation did not involve any aspects of the case and that it would not affect his impartiality as a juror. *Id.* at 96–97. At that point, appellant's counsel stated that he was satisfied and the trial reconvened.

Because the prosecutor and the juror did not discuss the case and there was no attempt to influence the outcome of the trial, the lower court concluded that the contact was satisfactorily explained and shown to be harmless. *See* PCHA Opinion at 8. *See also Colosimo v. Pennsylvania Elec. Co.,* 513 Pa. at 165, 518 A.2d at 1211. On the basis of this record, we cannot discern any prejudice to appellant from the juror's contact with the prosecutor. Although the contact and communication between the prosecutor and the juror was improper and ill-advised, appellant has failed to show that it resulted in a "likelihood of prejudice" to the outcome of his case. *See id.* Accordingly, because we cannot conclude that the Commonwealth's case benefitted from the prosecutor's contact with the juror and prejudiced appellant's case, appellant's claim lacks arguable merit and counsel was not ineffective for failing to move for a mistrial on the basis of the juror's contact with the prosecutor.[4]

For the foregoing reasons, we affirm the order of the PCHA court.

ORDER AFFIRMED. Jurisdiction relinquished.

4. It is important to note that by our decision here today, we are not condoning contact between jurors and officers of the court. Although, the facts of this case do not rise to the legal standard necessary to prove that the contact between the juror and attorney prejudiced appellant, we, nevertheless, are disturbed by the conduct exhibited by the prosecutor. Though the contact was shown to be innocuous, the prosecutor's actions by engaging in conversation with a juror and failing to report the incident to the court were imprudent and in disregard of not only the Code of Professional Responsibility, 7–108(B), but also the court's explicit instructions that there should not be any contact between the jury and the parties or their counsel.