Commonwealth *v.* Dixon, Appellant.

Argued March 31, 1955. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE, and ERVIN, JJ.

*Morton Witkin,* with him *I. Raymond Kremer* and *Witkin & Egan,* for appellant.

*Victor Wright,* Assistant District Attorney, with him *Samuel Dash,* Acting District Attorney, for appellee.

OPINION BY ERVIN, J., July 21, 1955:

This is an appeal from the sentence of Roy Dixon for the crimes of lottery and conspiracy to commit lottery. Dixon was jointly indicted on bills of indictment Nos. 563 and 564 of February Sessions, 1954, with four other defendants, Caswell Curtis, Joseph Ford, Caesar Nelson and Leo Coleman. In bill of indictment No. 563 the defendants were charged with conspiracy to commit bribery and corrupt solicitation of certain police officers and with bribery and corrupt solicitation. The defendant was acquitted on this indictment. In bill of indictment No. 564 the defendants were charged in the first count with erecting, setting up, opening, making and drawing of a lottery on July 1, 1952; in the second count with being concerned in the management, conducting and carry-

ing on of a lottery on July 1, 1952; in the third count with having in their possession with intent to sell and unlawfully selling lottery and numbers policy on July 1, 1952; in the seventh count the defendant was individually charged with erecting, setting up, opening, making and drawing a lottery on January 27, 1953; in the eighth count the defendant is individually charged with being unlawfully concerned in the management, conducting and carrying on of a lottery on January 27, 1953; in the ninth count the defendant was individually charged with having in his possession with intent to sell and unlawfully selling lottery and numbers policy on January 27, 1953; and in the 13th count defendants were charged with conspiracy to set up, make, open and draw a lottery for moneys, and to be concerned in the management, conducting and carrying on of the same, and to have in their possession with intent to sell and to unlawfully sell lottery policies and tickets on or about October 1, 1952. In addition the defendant Leo Coleman alone was indicted in bill of indictment No. 861 of August Sessions, 1953 for setting up an illegal lottery. Dixon was convicted on counts 1, 2, 7, 8 and 13 of indictment No. 564 and found not guilty as to counts 3 and 9 of the same indictment. Defendant was sentenced on counts 1, 2 and 3 of indictment No. 564 to not less than six months nor more than one year in the Philadelphia County Prison and on count No. 13 to not less than three months nor more than eleven months in the same prison to begin at the expiration of the sentence imposed on counts 1, 2 and 3.

The arguments presented on appeal will be disposed of in the same order as argued.

The defendant argues that bills of indictment No. 861 August Sessions, 1953 and Nos. 563 and 564, February Sessions, 1954, should not have been consoli-

dated for trial. He also contends that his motion for severance of the trials of the several defendants should have been granted. We agree that the trial court's ruling in favor of the Commonwealth on both of these points was not error. These matters were within the discretion of the trial judge. *Com. v. Novak,* 165 Pa. Superior Ct. 576, 69 A. 2d 186, cert. den. 339 U. S. 924, 70 S. Ct. 615, 94 L. Ed. 1346. This is especially true "where all the evidence that was admissible on the crimes charged in the other indictments tended to support the conspiracy charge. . . ." *Com. v. Weiner and Zvon,* 148 Pa. Superior Ct. 577, 25 A. 2d 844; *Com. v. McCord,* 116 Pa. Superior Ct. 480, 176 A. 834; *Com. v. Mulroy,* 154 Pa. Superior Ct. 410, 36 A. 2d 337. See also *Com. v. Quinn,* 144 Pa. Superior Ct. 400, 19 A. 2d 526, where we said: ". . . the testimony showed a *general course of conduct* . . . all tending to the same general end."; *Com. v. Ackerman,* 176 Pa. Superior Ct. 80, 106 A. 2d 886. *Com. v. Schmidheiser,* 111 Pa. Superior Ct. 283, 169 A. 572, and *Com. v. Dauphinee,* 121 Pa. Superior Ct. 565, 183 A. 807, are distinguishable from the present case in that no conspiracy is charged in either of those cases.

It is also argued by the appellant that the lower court erred in refusing the several motions for the withdrawal of a juror based upon improper remarks of the assistant district attorney who tried the case. We have read the entire record carefully and are not convinced that the remarks had the unavoidable effect of so prejudicing "the jury, forming in their minds a fixed bias and hostility toward the defendant, so that they could not fairly weigh in his behalf such circumstances of doubt, extenuation or degree of guilt that may be present in the case, and thus make them unable to render a true verdict." *Com. v. Meyers,* 290 Pa. 573, 581, 139 A. 374.

Of the seven counts against the defendant in indictment No. 564, he was acquitted of two. If the jury were prejudiced, they would not have been so discriminating and undoubtedly would have rendered guilty verdicts on all counts. As to the two remarks most seriously complained of, defendant's counsel, by his prior remarks, provoked the remarks. This opinion will not be unduly lengthened by referring to the record except to point out that defendant's counsel at least 10 times referred to "Republicans" or "Democrats" before the assistant district attorney stated: "He would only be a Democrat because the Democrats are in, Mr. Witkin, after 69 years of misrule." The court, upon denying the motion for the withdrawal of a juror, immediately made the following statement to the jury: "The jury will be strongly urged to ignore completely all references to Republicans and Democrats. We are here as Americans. We are not concerned with the party allegiance of any of the witnesses or any of the defendants or any of the persons referred to." This statement of the court must have produced the desired result else guilty verdicts would have been found by the jury on all counts and all indictments.

As to the other remark of the assistant district attorney seriously complained of by the defendant, defendant's counsel sought to have a letter read to the jury for the purpose of showing that a witness by the name of Buddy Mitchell had been brought from Georgia by the Commonwealth but had not been called as a witness. Defense counsel stated: ". . . there must be some reason why they have not called him." The assistant district attorney then informed the court why this witness had not been called and said: ". . . and I can assure Mr. Witkin that there are certain other witnesses who were questioned for weeks who were not

called here, again for security reasons." He further stated: "They were sitting here in this courtroom and were not called because we want them to live after this is over." The court denied the motion for the withdrawal of a juror and stated: "I will say to the jury that I caution you very urgently to ignore the last few words spoken by Mr. Crippins. They were not in order and it is not evidence. It is not a proper issue in this case." This, in our opinion, removed any prejudice from the minds of the jurors. The letter itself, which had been read to the jury, specifically referred to the fact that Mrs. Perry, one of the witnesses, fled from Philadelphia because of fear of arrest and "in fear of her life." It further pointed out that when she was brought back to Philadelphia she was "still terrified and afraid." The jury knew from the evidence already placed in the record with defense counsel's approval that this witness was terrified, afraid and in fear of her life. We doubt that any additional prejudice would arise from the statement of the assistant district attorney that other witnesses were in fear.

It is contended that the trial judge was prejudiced and that the sentencing of the defendant, Roy Dixon, when compared with the sentences imposed on the other defendants, shows such prejudice. We have carefully read the entire record, having this charge in mind, and are convinced that the trial judge was not only fair but was lenient in the sentence imposed upon this defendant. The sentencing of a defendant is a matter which is committed to the sound discretion of the trial judge. An appellate court should not interfere with this function which the legislature has wisely committed to the trial judge. In this case the trial judge properly took into consideration the fact that the defendant had an important position in the politi-

cal life of the community and owed an obligation to respect the office that he held. Not only did this defendant commit a crime against the Commonwealth but at the same time he did a great wrong to many other people honestly engaged in political activity. Such conduct contributes to the common belief that all politicians are corrupt and dishonest. The lower court also took into consideration the prior record of the defendant as well as his service in the armed forces.

Was there sufficient evidence to sustain the conviction of the defendant on counts 1, 2, 7 and 8 of indictment No. 564? Sentence was not imposed on counts 7 and 8 and they need not be considered here. The chief complaint of the appellant is that his conviction cannot be sustained unless the Commonwealth proved the commission of the crime on July 1, 1952. Counts 1, 2 and 3 of indictment No. 564 charged that the offense occurred "on July 1, 1952 and on divers other days and times within two years last past before the finding of this inquisition. . . ." The assistant district attorney asked the court to strike out as mere surplusage "and divers other days and times." The court granted the motion. The Commonwealth is not restricted to proof of the crime on the exact date stated in the indictment. In *Com. v. Levy,* 146 Pa. Superior Ct. 564, 569, 23 A. 2d 97, we said: "It may be conceded that in the prosecution of crimes of the kind here involved the Commonwealth is not required to prove their commission on the date laid in the indictment, but, failing in that, we think it has the burden, in order to sustain a conviction, of proving their commission upon some other date, fixed with reasonable certainty and being within the prescribed statutory period. . . ." See also *Com. v. Dingman,* 26 Pa. Superior Ct. 615, 620; *Com. v. Gaber,* 162 Pa. Supe-

rior Ct. 538, 540, 58 A. 2d 592; *Com. v. Mourar*, 167 Pa. Superior Ct. 279, 281, 74 A. 2d 734; *Com. v. Gipe*, 169 Pa. Superior Ct. 623, 626, 84 A. 2d 366. Indictment No. 564 was presented to the grand jury and a true bill found on February 11, 1954. The jury could properly consider and convict upon any evidence that showed commission of the crime or crimes charged within two years prior to February 11, 1954. The Act of 1860, March 31, P. L. 427, §77, 19 PS §211. A review of the evidence will show that in November 1952, at defendant's instance, A. B. Willis began giving his numbers business to Coleman and continued to do so until September 1953, paying to the defendant some weeks "$15, some weeks $25 maybe a little more, perhaps a little less"; Willis and defendant discussed the locations of numbers banks in the 44th Ward, of which defendant was Republican ward leader, during this period of time. William Bailey testified that on January 25, 1953 he rented the middle room of the second floor of his premises at 137 North Peach Street in Philadelphia to the defendant and Clee Coleman for the use of numbers at a rental of $10.00 a day and that they operated in the room thereafter and that he saw adding machines there; that his wife was arrested when a raid was made on January 26, 1953; Viola Bailey, the wife, testified that the defendant induced her to swear falsely at the preliminary hearing to the effect that she had rented the room in question to a man by the name of Johnson; at the trial of the defendant she refuted her prior testimony and denied renting it to Johnson. Harry Lowry testified that the defendant worked for Coleman in January and early February of 1952 and that he heard the defendant discussing with Coleman the numbers business in West Philadelphia and Chester. There is other evidence but the specific reference to the above testimony is suffi-

cient to show that there was sufficient evidence produced by the Commonwealth to convict the defendant of the commission of the crime on reasonably specific dates within the two year period preceding the exhibition of the bill of indictment to the grand jury on February 11, 1954.

The 13th count in indictment No. 564 charged the commission of the crime of conspiracy to commit lottery "on or about October 1, 1952." Without specifically referring to the evidence, we have reviewed the record and are convinced that there was sufficient evidence to justify the verdict of guilty on the conspiracy charge.

Appellant further contends that the trial court erred in permitting the two alternate jurors to retire with the jury panel following the completion of the trial and in permitting them to have dinner with the jury. In that connection the court said: "Members of the Jury, don't rush to any verdict. You will have your dinner now, and then you will come to the jury room for your deliberations.

"As you retire, I want to thank the two ladies who served as alternates for their patience and their endurance. However, their services will no longer be required on this jury. I am sure they will be interested in the outcome that will be arrived at by their colleagues in the jury box. The two alternates will have dinner with the rest of the jury. *Then the jury will retire, with the twelve jurors going into the jury room. Do not discuss the case until you retire to the jury room.*" (Emphasis added)

In *Com. v. Krick,* 164 Pa. Superior Ct. 516, 520, 67 A. 2d 746, we held that it was error to allow alternate jurors to retire to the jury room with the jury. In that case the court allowed the alternates to retire to the jury room to deliberate with the jury and upon

exception by counsel they were withdrawn after they had been in the jury room approximately ten minutes. We said in the *Krick* case: "To allow the alternates any opportunity to deliberate with the others after the case had been submitted was a direct violation of the Act, and constitutes reversible error." The *Krick* case is clearly distinguishable from the present case. Here the trial court expressly told the jury they were not to begin any deliberations until they retired to the jury room. We must assume that the jury followed the court's instructions. In this case the two alternate jurors were actually discharged before the jury retired.

Complaint is also made by the appellant that the reception and recordation of the verdict of juror No. 10 was in error. Defense counsel requested that the jury be polled before the verdict was recorded. Juror No. 10, in rendering her individual verdict as to bill No. 564 for defendant, made a mistake as to certain counts of the bill but promptly corrected the mistake by stating what she actually meant. As thus corrected her individual verdict was in agreement with the verdict which had previously been announced by the jury. In *Com. v. Minoff*, 363 Pa. 287, 297, 69 A. 2d 145, the Supreme Court said: "However, if there is a mistake in the verdict as orally given by the jury in open court, it may be corrected until officially recorded. In Walters v. Junkins, 16 S. & R. 414, 415, this court said,—'After the jury have rendered their verdict, it is read to them, that they may say, whether the court have recorded it according to their finding. If any mistake should have occurred, it may be immediately corrected.'" See also *Com. v. Martin*, 379 Pa. 587, 109 A. 2d 325. It is urged by appellant that the trial judge improperly influenced the juror in the rendition of her verdict. A reading of the record will

show the fallacy of this statement. The juror really corrected her own mistake and eventually brought herself into complete accord with the verdict as previously announced. All of this was done before the verdict was recorded.

Appellant also complains that he was improperly sentenced on count 3 of indictment No. 564. The jury had acquitted him on this count. The judge in sentencing lumped counts 1, 2 and 3. Since the trial court did not specifically sentence on any one of the three counts, it is a valid sentence on counts 1 and 2. See *Com. v. Waychoff*, 177 Pa. Superior Ct. 182, 110 A. 2d 780.

The appellant also complains of the refusal of the trial judge to charge the jury that conspirators may not corroborate each other and relies upon *Com. v. Simon*, 44 Pa. Superior Ct. 538, in support of his position. We held in that case that the lower court erred in instructing the jury that the testimony of one of the accomplices "of course is very positive corroboration, if you believe it." The trial judge made no such statement in the present case but stated to the jury: "Consider also the fact that these people are admitted accomplices. They tell you that they were engaged in these law violations. How much weight do you give to the testimony that comes from a polluted source, that comes from a corrupt source? Consider the convictions for serious offenses. How much weight do you give to the testimony of people who are convicted felons?

"I should say to you that you should scrutinize with care and with caution the testimony of accomplices who come into Court, admit that they were law violators, and involve others as being guilty of the same offenses, because it is a polluted source from which we are getting this testimony.

"But that does not mean that a Jury may not convict on the testimony, even of one such polluted and corrupt witness, because it is common sense that a person may be a villain as to many other matters, and still be telling the truth as to the pivotal issue which you, as the triers of the facts, have to determine, and that is the guilt or innocence of the defendants."

The charge correctly set forth the law as to accomplices.

Appellant also complains that the trial court erred in failing to caution the jury concerning certain money paid to Commonwealth's witnesses by the district attorney's office. Without specifically referring to the charge of the lower court in this connection, suffice it to say that the jury's attention was expressly called to the fact that they had received this money and that they could consider that in considering "their interest and their bias."

The judgment of sentence is affirmed and the defendant is directed to appear in the court below at such time as he may be there called, and it is ordered that he be by that court committed until he has complied with the sentence, or any part of it, which had not been performed at the time the appeal was made a supersedeas.

GUNTHER, J. dissents.