Commonwealth *v.* Conner, Appellant.

Argued May 24, 1971. Before BELL, C. J., JONES, EAGEN, O'BRIEN, ROBERTS, POMEROY and BARBIERI, JJ.

*William H. Saye,* Assistant Public Defender, for appellant.

*Marion E. MacIntyre,* Assistant District Attorney, with her *LeRoy S. Zimmerman,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, October 12, 1971:

In a jury trial on an indictment charging murder, John Robert Conner was convicted of voluntary manslaughter. This appeal is from the judgment of sentence.

From the trial testimony of the witnesses called by the Commonwealth, the jury could find the following facts.

About 1 a.m., on December 4, 1968, Conner, while seated in his automobile, observed his estranged wife and John Ardelean about to enter a house in Harrisburg wherein the latter resided. Conner left the automobile and confronted the two on the porch of the dwelling. A physical altercation between Conner and Ardelean ensued on the porch and continued on the sidewalk in front of the house. During this latter period of the fight, Ardelean fell to the pavement and, while he was lying thereon, Conner kicked him several times in the area of the face. Conner then left the scene in his automobile. After visiting residences of two friends whom he told he had just beaten Ardelean,[1]

---

[1] To one of these individuals, Conner said, "I just beat the hell out of Johnny Ardelean." . . . . "I was kicking and kicking him."

Conner changed the license plate on his automobile and fled into an adjoining county where he was subsequently apprehended.

The police arrived at the scene of the fight shortly after its occurrence and found Ardelean lying prostrate on the sidewalk and immediately arranged his transfer via ambulance to a hospital where he was pronounced dead on arrival. An autopsy evidenced death resulting from "hemorrhage surrounding the brain" and "hemorrhage into the ventricular system" caused by *several* "violent" traumas to the head.

In defense, Conner testified at trial that he and Ardelean had been friends for years; that on the occasion involved upon seeing his wife and Ardelean in front of the latter's residence he walked to the porch of the dwelling and asked, "What's going on," whereupon Ardelean ordered him off the porch and kicked him in the leg; that a wrestling encounter and an exchange of blows with fists followed, during which both combatants fell down "two or three" concrete steps to the sidewalk in front of the house; that the melee continued on the sidewalk during which each tripped the other causing the other to fall; and finally he tripped and pushed Ardelean, and as Ardelean fell his head struck the side of an automobile parked in the street. He denied kicking Ardelean.

It is first argued that the evidence was insufficient to establish the crime of voluntary manslaughter, specifically the presence of an intent to kill.[2] This position completely overlooks the significance of the testimony offered by the Commonwealth that Conner inflicted several kicks to the victim's head as he lay help-

---

[2] Voluntary manslaughter consists of an *intentional* and unlawful killing of a human being without malice, either express or implied, but committed under the influence of sudden passion. *Commonwealth v. Flax*, 331 Pa. 145, 200 A. 632 (1938).

less on the ground. This testimony was adequate to warrant the jury in finding an intent to kill existed and, needless to say, in evaluating the sufficiency of the evidence to sustain a criminal conviction, the Commonwealth is entitled to every reasonable inference arising from the evidence. *Commonwealth v. Ewing*, 439 Pa. 88, 264 A. 2d 661 (1970).

It is next maintained that the trial court's charge to the jury was inadequate on accidental homicide. Assuming the trial evidence required such an instruction, we first note that no further instructions on this subject were requested, and no exceptions to the charge were entered of record. Further, our study of the charge in its entirety is persuasive that the issue was adequately and fairly explained to the jury.

The next assignment of error concerns the assistant district attorney's inquiries during cross-examination of Conner as to alleged prior criminal acts. While such crass cross-examination is not condoned, we are not convinced that, under the circumstances, it constituted such error as to require a reversal of the judgment. On direct examination in response to questions by his own counsel, Conner admitted having been previously convicted of several very serious criminal offenses. Moreover, the trial court with admirable alertness immediately stopped the challenged inquiries and issued a positive command to the jury to disregard them, and followed with a careful instruction that Conner's testimony concerning his previous criminal conduct was to be considered only for the purpose of assessing the credibility of his trial testimony.

Additionally, it is argued that the jury's verdict was not unanimous and should have been rejected by the court. This contention arises from the following trial episode.

After the jury finished deliberations and returned to the courtroom with its verdict, the court inquired

if a verdict had been reached, and the foreman of the jury replied, "We have." The foreman then announced that Conner was found guilty of "voluntary manslaughter." The assistant district attorney then requested that the jury be polled and the court directed that this be done. A clerk then proceeded to ask each juror, "How do you find the defendant," and in one instance a juror replied, "involuntary manslaughter." When the court asked, "What kind of manslaughter," this juror said "voluntary manslaughter, I'm sorry." When the clerk subsequently asked the same question of another juror, the response was, "Guilty of involuntary manslaughter," but when the court asked, "You mean what," this juror replied "voluntary manslaughter." After every juror had been polled, the court asked counsel, "Gentlemen is there any reason why this verdict should not be recorded," and counsel for Conner replied, "No reason on behalf of the defense, Your Honor." The clerk then asked the jury to rise and to "harken" to its verdict, namely, "You find the defendant guilty of voluntary manslaughter," and the jury replied collectively, "Yes."

It is basic to our system of justice that a verdict of guilty by a jury in a criminal case should not stand if it is not freely given and is not unanimous. *Andres v. United States*, 333 U.S. 740, 68 S. Ct. 880 (1948). And "the purpose of the poll is to give any juror, who may possibly have been under pressure from other members of the jury to acquiesce in the verdict, an opportunity to speak out and declare to the court that the verdict as announced by the foreman was not voluntarily joined in by the answering juror." *Commonwealth ex rel. Ryan v. Banmiller*, 400 Pa. 326, 328, 162 A. 2d 354 (1960). See 2 *Kessler*, The Law of Criminal Procedure in Pennsylvania, 617 (1961). And, "If upon such poll there is no concurrence except for a sealed

verdict, the jury shall be directed to retire for further deliberations." Pa. R. Crim. P. 1120F.

The record here involved clearly establishes that the jury unanimously agreed upon a guilty verdict. While the initial responses of two jurors during the poll indicated lack of agreement on guilt of "voluntary manslaughter," their subsequent answers to questions by the court manifested that their initial responses to the clerk were made through inadvertence and that these particular jurors unequivocally and understandingly assented to the verdict as announced by the foreman, and later recorded by the court. Under these circumstances, the contention that the verdict was not unanimous is without merit. Cf. Annot. 25 A.L.R. 3d, 1149 (1969), and 21 Am. Jur. 2d Criminal Law §372 (Supp. 1970).

Finally, we have carefully considered every assignment of error asserted both by appellant's counsel and appellant personally and find nothing to warrant a reversal of the judgment.

Judgment affirmed.

Mr. Justice JONES concurs in the result.

---

CONCURRING OPINION BY MR. JUSTICE ROBERTS:

I concur in the result solely for the reason that appellant has waived his right to now challenge the allegedly improper cross-examination of him by the assistant district attorney. This waiver is premised upon his failure to raise this issue in his motion for a new trial.

It is well settled that this Court will not consider for the first time on appeal assignments of error not raised in the trial court. See, e.g., *Commonwealth v. Garrett*, 423 Pa. 8, 10 n.1, 222 A. 2d 902, 904 n.1 (1966). The majority has nevertheless chosen to reach the merits of this issue, and I must express my disagreement with their conclusion.

After first asking appellant the date of his marriage, the assistant district attorney inquired as follows: "Q. Isn't it true Mr. Conner, that you were convicted of taking your wife to a house of prostitution under the Mann Act? THE COURT: Well, now, that's objectionable. I'll handle that part of it. . . ." Despite this prompt and stern admonition by the trial judge, the assistant district attorney persisted in his quest of exposing appellant's prior criminal activity, asking him: "Q. Mr. Conner, isn't it true that you tried to burn your wife's house down at one time?"

The heinous crimes thus imputed to appellant were very likely to inflame the passions of the jury. I therefore cannot subscribe to the majority's view that these prosecutorial references were not improper and prejudicial.