Commonwealth *v.* Morin, Appellant.

534

Submitted April 16, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Leonard E. Sweeney,* for appellant.

*Louis R. Paulick* and *Robert L. Eberhardt,* Assistant District Attorneys, *John M. Tighe,* First Assistant District Attorney, and *John J. Hickton,* District Attorney, for Commonwealth, appellee.

OPINION BY VAN DER VOORT, J., December 1, 1975:

The appellant, Frank Morin, was charged with the crime of theft by deception. He was tried and convicted by a Judge sitting without a jury on September 24th and 25th, 1974. Post trial motions for a new trial and in arrest of judgment were filed, argued and refused. The appeal to this Court followed from the judgment of sentence of October 18, 1974.

The appellant having been adjudged guilty, we are bound in reviewing the facts of the case to "accept as true all of the evidence, direct or circumstantial, and all *reasonable* inferences arising from the evidence, upon which the trier of facts could properly have based the verdict." *Commonwealth v. Fortune,* 456 Pa. 365, 367, 318 A.2d 327 (1974).

In September of 1973, Marie C. Fenn, an eighty year old spinster, lived alone at 901 Brookline Boulevard in the City of Pittsburgh. Early in September of that year, appellant Frank Morin, aged 27, asked her if he could have a room, saying that he had no money and that he was hungry. She took him in and the two together began living in the house.

On September 17, 1973, Morin appeared at the Dollar Savings Bank in the City of Pittsburgh, where Miss Fenn had a savings account. He had with him a letter signed by Marie C. Fenn. He had her pass book and a Dollar Savings Bank signature card which was signed by appellant and Miss Fenn and which contained a request that a joint account in both their names (Marie Fenn or Frank Morin) be opened. The letter which Morin had read as follows:

Sept. 14, 1973

To whom it may concern.

This letter is to introduce you to Frank Morin who has been my loyal friend and companion. He handles all my business affairs and is the sole heir of my

estate. Please show him every courtesy that you have extended to me in the past years.

> Thank you,
> s/Marie C. Fenn

The bank changed the single savings account over to the joint names of Marie Fenn and Frank Morin. The following day, the appellant again appeared at the Dollar Savings Bank and presented another letter dated the same day as the first letter, viz: September 14, 1973. He presented it to the bank. This letter read as follows:

> Sept. 14th, 1973

To whom it may concern.

Please transfer my account #505626 to a joint account in my name or Frank Morin. I want Frank to have an individual [sic] right to with-drawl. [sic]

> Thank you,
> s/Marie C. Fenn

On that same day, September 18, 1973, the appellant withdrew $9,500.; then again on September 24th, he withdrew $9,800.; and again on September 25th, $6,000.; on September 26, $9,800.; and on September 27th, $7,500. His total withdrawals in the ten-day period were $42,600, leaving a balance in the account of $483.56.

Miss Fenn also maintained a savings account at Pittsburgh National Bank, whose records showed that between September 6th and September 25th, 1973, she withdrew $18,000, which was then deposited in her checking account at Pittsburgh National Bank. Between September 7th and October 1st, 1973, Frank Morin got five checks drawn on her Pittsburgh National Bank checking account and signed by Miss Fenn totaling $35,500, which checks he converted to his use. From September 7th to October 1st, 1973, Morin acquired control of $78,100 of Miss Fenn's money. Appellant had established a checking account at Pittsburgh National Bank and between the dates of September 11th and September 21st, 1973, he deposited

$18,000 in his checking account. He told an employee of the Dollar Savings Bank, while he was cashing one of the treasurer's checks issued to him, that he was leaving town and converting all his money into cash.

Appellant was a new acquaintance of Miss Fenn. He was not related to her in any way. He told Miss Fenn "he was going to take care of her." He got her to sign many papers, some of which he represented to Miss Fenn had to do with his getting employment. Miss Fenn never authorized appellant to take her money, she never loaned him any money, and she testified that he stole her money. On October 16, 1973, Miss Fenn, having discovered that her money had been withdrawn from her bank books, complained to the police that her money had been stolen.

Appellant claims that Miss Fenn was incompetent as a witness. The trial judge inquired into Miss Fenn's competency at length. Her testimony indicates that she was suffering from a moderate degree of senility. Her recall of events in the past was good, but as happens in a number of older people, her recall of recent events was difficult. In *Commonwealth v. Chuck,* 227 Pa. Superior Ct. 612, 614-615, 323 A.2d 123, 125 (1974), our Court stated the law regarding the competency of witnesses, as follows:

> "The mental competency of a witness is a matter for the trial judge to determine and his action is not reviewable in the absence of a clear abuse of discretion.
>
> . . .
>
> "When the mental competency of a witness is questioned the trial judge must determine whether the witness has sufficient understanding to comprehend the obligation of an oath and to be capable of giving a correct account of the matters he has seen or heard.
>
> . . .
>
> "A witness gives a correct account of the matters he has seen or heard when he describes them in a

lucid rational manner and is responsive to questions upon cross-examination." (Citations omitted).

The witness, Marie Fenn, was questioned on direct examination to determine her comprehension of the significance of the oath:

"Q Do you know what it means to take an oath, Miss Fenn?

A Yes. You are swearing to God.

Q What does that mean to you, to swear to God?

A That I am telling the truth and nothing but the truth.

Q Do you believe in God, Miss Fenn?

A I certainly do. I go to church all the time.

Q You go to church all the time?

A Yes.

Q If I asked you certain questions here today, are you going to tell the truth or are you going to tell a lie?

A I will tell the truth if it kills me.

Q And if the judge should ask you any questions or Mr. Sweeney would ask you any questions, will you also tell the truth to any questions they put to you?

A Absolutely. I won't tell them anything but the truth.

Q You have already sworn and taken an oath?

A I have.

Q Do you understand that oath?

A I do."

It appears from this inquiry that Miss Fenn did comprehend the nature and obligation of the oath. An examination of the testimony discloses that Miss Fenn had a reasonable comprehension of the questions asked of her and that she made responsive answers. It is true that at times she demonstrated confusion and at other times made answers which contradicted her earlier statements.[1] The fact that a witness makes inconsistent or

---

1. Miss Fenn became confused as to where she had spent Christmas in 1973. She testified that the nursing home which she had entered a few months before the trial was in Castle Shannon when in fact it was located in New Castle, and she testified on

even contradictory statements does not make her an incompetent witness, but may affect her credibility. *Commonwealth v. Douglass*, 185 Pa. Superior Ct. 269, 273, 138 A.2d 193, 195 (1958). Miss Fenn's inconsistent and contradictory statements did not relate to the primary question at issue; that is, whether or not appellant had stolen her money. On this principal question at issue, her testimony was firm and consistent as is demonstrated by a portion of her testimony as follows:

"Q Did you have these monies, Miss Fenn?

A I had plenty of money but he took it.

Q Did you ever give him permission to take it?

A No.

Q Are you certain of that?

A Absolutely.

Q Did you ever loan him this money?

A No. I never lent him anything.

Q Did you want him to have this money?

A No, I don't.

Q You don't know how much money he took, do you?

A He stole everything he could get his hands on."

We find no abuse of discretion on the part of the trial judge in declaring the witness competent to testify.

The appellant complains that the evidence is insufficient to support a conviction of theft by deception. Section 3922 of the Crimes Code[2] states:

"A person is guilty of theft if he intentionally obtains or withholds property of another by deception. A person deceives if he intentionally:

(1) creates or reinforces a false impression, including false impressions as to law, value, intention or other state of mind; but deception as to a person's

---

direct examination that she had signed papers for appellant and on further questioning (cross and re-direct) she testified that she never signed anything for appellant.

2. 18 Pa. C.S. §3922, added by Act of December 6, 1972 (P.L. 1482, No. 334) §1.

intention to perform a promise shall not be inferred from the fact alone that he did not subsequently perform the promise;

(2) prevents another from acquiring information which would affect his judgment of a transaction; or

(3) fails to correct a false impression which the deceiver previously created or reinforced, or which the deceiver knows to be influencing another to whom he stands in a fiduciary or confidential relationship."

The evidence is definite and clear that appellant obtained the money of Miss Fenn by deception. The bank's records, together with the testimony of the employees of the banks, clearly establish that appellant obtained Miss Fenn's money. The representation by appellant that he had been Miss Fenn's loyal friend and companion, that he handled all of her business affairs and that he was the sole heir to her estate was deceitful and false. He told Miss Fenn that he was going to take care of her, and in getting her to sign some of the papers, he told her it had to do with his getting employment, both of which representations to Miss Fenn were deceitful. These deceitful acts are corroborated by the fact that appellant, a stranger, within a period of twenty-four (24) days acquired $78,100 of Miss Fenn's money without any consideration or return to her.

We find the evidence sufficient to warrant a conviction of theft by deception.[3]

---

3. Were we to find the evidence insufficient to sustain a conviction of theft by deception it would not be fatal to the finding of guilt. Section 3902 of the Crimes Code, 18 Pa. C.S. §3902 states that:

"Conduct denominated theft in this chapter constitutes a single offense. An accusation of theft may be supported by evidence that it was committed in any manner that would be theft under this chapter, notwithstanding the specification of a different manner in the complaint or indictment, subject only to the power of the court to ensure fair trial by granting a continuance or other appropriate

A final argument raised by appellant in this appeal is that the trial judge erred in permitting excessive use of leading questions by the prosecution, and also by interrogating witnesses from the bench. Our Supreme Court stated in *Commonwealth v. Gockley,* 411 Pa. 437, 455, 192 A.2d 693, 702 (1963): "The extent to which a Court tolerates leading questions, or suggests how questions asked by counsel should be phrased or rephrased so as to avoid error, and the extent to which the trial Judge himself elicits information, are matters within the discretion of the trial Judge and we will not reverse his exercise of such discretion except in cases of clear abuse." The trial judge in the case before us did not inject himself into the questioning of witnesses to the point where he became an advocate; the judge, as was his right, particularly in a non-jury trial, merely asked questions to clarify matters.

Judgment affirmed.

---

CONCURRING OPINION BY SPAETH, J.:

I agree with the majority that the judgment of sentence in this case should be affirmed. I do not agree, however, with the majority's *dicta* in footnote three. Section 3902 of the Crimes Code, 18 Pa. C.S. §3902, does not mean that on appeal an *appellate* court can substitute a different theft offense for the one the defendant was

---

relief where the conduct of the defense would be prejudiced by lack of fair notice or by surprise."

This statute means that appellant can be found guilty in this case of an offense of theft other than theft by deception because the record contains clear and convincing evidence supporting beyond a reasonable doubt the taking or exercising of unlawful control of movable property. Such offense is formulated in pertinent part in Section 3921 of the Crimes Code, 18 Pa. C.S. §3921, as follows:

"(a) Movable property.—A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof."

convicted of in the court below. It merely permits the *trial* court to consolidate theft offenses where the evidence differs from the indictment or complaint and where the defendant has had adequate notice and preparation time to ensure a fair trial on the consolidated offenses.