406 A.2d 765

COMMONWEALTH of Pennsylvania

v.

**Drake HALL a/k/a James Carter, Appellant.**

Superior Court of Pennsylvania.

June 15, 1979.

Petition for Allowance of Appeal Denied Oct. 31, 1979.

John W. Packel, Assistant Public Defender, Chief, Appeals Division, Philadelphia, for appellant.

Robert B. Lawler, Assistant District Attorney, Chief, Appeals Division, Philadelphia, for Commonwealth, appellee.

Before JACOBS, President Judge, and HOFFMAN, CERCONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

HESTER, Judge:

Appellant Drake Hall, a/k/a James Carter was convicted by a jury in the Court of Common Pleas of Philadelphia County of one count of robbery. Following denial of post-trial motions, he was sentenced to a maximum term of ten to twenty years imprisonment. This direct appeal followed.

Testimony at trial established the following. On March 5, 1976, the victim, 43 year-old Phillip Skipworth, was in his home he shared with his brother on Farragut Street in Philadelphia. Sometime during the afternoon, appellant and an unidentified individual came to the door and asked for Phillip's brother Wilbur. Although Wilbur was not at home

at that time, Phillip admitted the two men into the house and accompanied them upstairs. At this point, appellant's companion bound Phillip's hands, threatened him with an iron bar, and forced him to lie on a bed. Appellant and his confederate then removed clothes, TV set, and "a few more things" from the house and quickly fled. Phillip was soon able to free himself and summon aid. Appellant was known to Phillip as an occasional companion of Wilbur Skipworth and thus Phillip could readily supply investigating officers with appellant's name and description. An arrest warrant issued the next day, but was not served on appellant until nearly five months later.

Appellant testified that he was indeed at the Skipworth residence on March 5, 1976 in the company of Phillip and one James Allan. Appellant left the premises without Allan and discovered later that Allan had threatened Phillip and taken several items from the house. Appellant admitted to eluding the authorities for five months because he was aware the police were looking for him, but he denied any participation in the robbery.

Appellant first contends he is entitled to a dismissal of all charges because the Commonwealth did not bring him to trial within the time required by Pa.R.Crim.P. 1100. At a pre-trial suppression hearing, counsel raised the prompt trial issue orally, suggesting the 180 day time limit had long since expired and that appellant should be discharged. This motion was denied. We think the Rule 1100 claim has not been properly preserved since it was presented orally and not in writing as Rule 306 clearly requires: "All pretrial motions for relief shall be in writing . . ." Moreover, Rule 1100 itself implies that an application to dismiss must be written: "A *copy* of such application shall be served upon the attorney for the Commonwealth . . ." Rule 1100(f), (emphasis added). The reason for requiring *written* pretrial motions is well settled. A writing crystalizes the specific grounds relied upon for relief and ensures that the Commonwealth, trial, and appellate courts will know the precise contentions raised, allowing a focused response and

decision. *Commonwealth v. Kinsey*, 249 Pa.Super. 1, 375 A.2d 727 (1977). In the instant case, the Rule 1100 issue was raised by the defense counsel as an afterthought following a lengthy pretrial hearing on other matters. The brief, cursory discussion which ensued between the court and counsel illustrates by contrast the need for a prior, written motion, allowing both sides to carefully prepare their positions and to present concrete, well-reasoned arguments to the court. We cannot accept such cavalier treatment of important issues below, in derogation of the Rules, and thus hold appellant has waived his Rule 1100 claim by failing to file a written application to dismiss. See, *Commonwealth v. Webb*, 254 Pa.Super. 429, 386 A.2d 25 (1978) (Opinion in Support of Affirmance).

Appellant next challenges the competency of the Commonwealth's chief witness, Phillip Skipworth. Phillip, age 43 at time of trial and an epileptic, experienced some difficulty at the preliminary hearing understanding questions posed to him and recalling certain facts germane to the incident. At a pretrial hearing, the court determined Phillip competent to testify.

Initially we note the competency of a witness is a matter for the trial court to determine and is not reviewable in the absence of a clear abuse of discretion. *Commonwealth v. Ware*, 459 Pa. 334, 329 A.2d 258 (1974); *Commonwealth v. Allabaugh*, 162 Pa.Super. 490, 58 A.2d 184 (1948). The relevant inquiry is whether the witness: 1) has the capacity to observe or perceive the occurrence with a substantial degree of accuracy; 2) has the ability to remember the event which was observed or perceived; 3) has the ability to understand questions and to communicate intelligent answers about the occurrence, and; 4) has a consciousness of the duty to speak the truth. *Commonwealth v. Pronkoskie*, 477 Pa. 132, 383 A.2d 858 (1978); *Commonwealth v. Mazzoccoli*, 475 Pa. 408, 380 A.2d 786 (1977); *Commonwealth v. Baker*, 466 Pa. 479, 353 A.2d 454 (1976); cf. *Rosche v. McCoy*, 397 Pa. 615, 156 A.2d 307 (1959). Appellant instantly centers his attack on the fourth criteri-

on, which we have also described as "the moral responsibility to be truthful". *Commonwealth v. Mangello,* 250 Pa.Super. 202, 203, 378 A.2d 897, 898 (1977).

■ The following colloquy between Phillip and the trial court amply demonstrates Phillip was well aware of his obligations under oath:

Q. Do you know what you just did a while ago when the man came over and you put your hand on that book? Do you know what you did?

A. Yes.

Q. Tell me, what did you do?

A. I swore.

Q. Right. Go ahead. That you would do what?

A. Tell the truth.

Q. You're telling me the truth now, aren't you?

A. Yes, I am.

Q. Were you involved in an incident back on March 5, 1976? Why are you here today?

A. To tell you the right fellow that robbed me.

Q. In other words, you're here to tell me about a robbery; is that what you're saying?

A. Yes, I am.

Q. Now, you know the difference between right and wrong, don't you.

A. Yes, I do.

Q. And if you're allowed to testify before me and a jury of twelve people, would you tell them the truth?

A. Yes, I will.

Q. Would you know what would happen if you didn't tell the truth?

A. I probably get sent to prison.

Competency Hearing of 10/15/76, pp. 13–14.

This Court has previously upheld fear of incarceration as sufficient to establish the consciousness of the duty to speak the truth. *Mangello,* supra, (five year-old victim's belief

that people who tell lies "go to jail", held sufficient); *Commonwealth v. Ault,* 228 Pa.Super. 353, 323 A.2d 33 (1974) (nine year-old witness' statement " 'if you don't do it [tell the truth] in court, you get put in jail' ", held sufficient). Our courts have found on a number of occasions that a witness' expectation of punishment following a lie under oath will satisfy the fourth requirement of *Baker,* supra. See, *Commonwealth v. Riley,* 458 Pa. 390, 326 A.2d 384 (1974) (witness' statement he would "go to the devil" if he lied); *Commonwealth v. Fox,* 445 Pa. 76, 282 A.2d 341 (1971) (witness' statement "I'd be in trouble" if she lied); *Commonwealth v. Payton,* 258 Pa.Super. 140, 392 A.2d 723 (1978) (witness' statement that her mother would punish her if she lied); *Commonwealth v. Hughlett,* 249 Pa.Super. 341, 378 A.2d 326 (1977) (witness' statement she would "go to hell" if she didn't tell the truth). See also, *Commonwealth v. Romanoff,* 258 Pa.Super. 452, 392 A.2d 881 (1978); *Commonwealth v. Morin,* 237 Pa.Super. 533, 352 A.2d 189 (1975); *Allabaugh,* supra. This is thus not a case where a deficiency in the witness' responses or the witness' inability to comprehend the necessity of truth telling has led our courts to conclude the witness was not competent. *Commonwealth v. Mazzoccoli,* 475 Pa. 408, 380 A.2d 786 (1977) (witness stated he did not know what would happen if he lied and later stated it is right to tell a lie); *Commonwealth v. Rimmel,* 221 Pa.Super. 84, 289 A.2d 116 (1972) (no indication in record that young female witnesses could comprehend difference between truth and falsehood; witness' statements they would be "beaten", "punished", and "hollered at" if they lied, held not sufficient to show they understood nature of taking an oath; *Rimmel* was criticized and confined to its facts in *Commonwealth v. Mangello,* supra, 250 Pa.Super. 202, 378 A.2d 897 (1977)). In the instant case, the record leaves no doubt that Phillip understood the nature of an oath and could distinguish between truth and falsehood.[1] We cannot say it was

1. Appellant directs us to the following exchange between defense counsel and Phillip at the competency hearing as vitiating Phillip's understanding of the oath:

an abuse of discretion for the court to find him competent.[2]

Appellant's next averment of error relates to alleged confusion on the part of one juror as to the verdict. The facts are these. Appellant was tried for, in addition to robbery, counts of simple assault, burglary, and conspiracy. When the jury returned from its deliberations, the forelady announced the not guilty verdicts as to assault, burglary, and conspiracy, and the guilty verdict as to robbery. A poll was requested by the defense as to the guilty bill and the following exchange occurred with Juror Number One:

> COURT OFFICER: Juror number one, Annabelle Forrest, please rise.
>
> This Bill of Information Number 1317, October Session 1976, charging the defendant with robbery, how do you say, guilty or not guilty?

JUROR NUMBER ONE: Not guilty.

[DEFENSE COUNSEL] If the Court please—

THE COURT: —Wait a minute. Just a moment.

Q. Did the district attorney tell you before you got on the witness stand when you swore on the Bible to tell the truth, that you would go to jail if you didn't tell the truth?
A. Yes, he did.
Q. Did he tell you the district attorney or the Judge was going to ask you what it meant to swear on the Bible? Did the district attorney tell you that?
A. I knew already.

Competency Hearing of 10/15/76, pp. 20–1.

First of all, we rejected a similar claim in *Payton,* supra, where we noted it does not matter who tells the witness he will be punished for lying so long as he understands the concept of punishment. "It would be inappropriate to compare this with a situation where the District Attorney tells a witness what answers to give to questions directly related to the crime." *Payton,* 392 A.2d at 725. Further, we think Phillip's response "I knew already" sufficient, with his other testimony at the hearing, to show he understood his obligations.

2. Appellant also argues counsel's cross-examination of Phillip at the competency hearing was improperly limited by the court. Counsel was attempting to elicit various inconsistent responses Phillip made at the preliminary hearing. "The fact that a witness makes inconsistent or even contradictory statements does not make [him] an incompetent witness, but may affect [his] credibility." *Commonwealth v. Morin,* 237 Pa.Super. 533, 535, 352 A.2d 189, 192 (1975). We have examined the colloquy as a whole and find no error meriting reversal.

JUROR NUMBER ONE: I made a mistake.

[FORELADY] She doesn't understand the charges.

THE COURT: Would you please rise?

JUROR NUMBER ONE: Yes.

THE COURT: The question asked of you is how do you find the defendant on the charge of robbery?

JUROR NUMBER ONE: Guilty.

N.T. of 10/21/76, pp. 302–3.

The polling of the remaining jurors proceeded without incident and at the conclusion thereof defense counsel requested further inquiry into Juror Number One's possible confusion. The court refused counsel's request and appellant now assigns that refusal as error. We do not agree.

 It is fundamental that a criminal defendant tried before a jury is entitled to a unanimous verdict before a conviction is proper. Pa.Const. Art. 1, Secs. 6, 9; Pa.R. Crim.P. 1120(b); *Commonwealth v. Conner*, 445 Pa. 36, 282 A.2d 23 (1971); *Commonwealth v. Pemberton*, 256 Pa.Super. 297, 389 A.2d 1132 (1978). See, *Apodaca v. Oregon*, 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972). To ensure this guarantee, the defense may request a poll of the jury to ascertain whether each juror concurs in the verdict. Pa.R. Crim.P. 1120(f). "The purpose of the poll is to give any juror, who may possibly have been under pressure from other members of the jury to acquiesce in the verdict, an opportunity to speak out and declare to the court that the verdict as announced by the foreman was voluntarily joined in by the answering juror." *Commonwealth ex rel. Ryan v. Banmiller*, 400 Pa. 326, 328, 162 A.2d 354, 355 (1960). Thus, our courts have found that a poll may well reveal equivocation by a juror on a verdict or a substantial doubt that the responding juror joins his colleagues in the decision. In such instances, the courts have not hesitated to reverse. See, e. g., *Commonwealth v. Brown*, 231 Pa.Super. 431, 332 A.2d 828 (1974) (juror, during poll, responded "not guilty" twice; further inquiry revealed the juror had hearing impairment; new trial ordered); *Commonwealth v. Corbin*, 215 Pa.Super. 63, 257 A.2d 356 (1969) (trial court refused to hear a question

from juror who, during poll, indicated a problem with the verdict; juror, after recording of verdict, stated he would like to change his vote; new trial ordered); *Commonwealth v. Watson*, 211 Pa.Super. 394, 236 A.2d 567 (1967) (juror, during poll, expressed disagreement with guilty verdict and only changed his vote upon being importuned by court to come to final decision; new trial ordered).

■ Our cases also recognize, however, that a juror's initial ambiguous, inconsistent, or evasive answer to a poll does not vitiate unanimity so long as a subsequent answer or further interrogation indicates clear and unequivocal assent to the majority vote, and there is no evidence of involuntariness or coercion. *See, e. g., Commonwealth v. Jackson*, 457 Pa. 237, 324 A.2d 350 (1974) (juror's response "He is guilty in one way and I am not sure in another way", followed quickly by a definitive guilty vote, held, a unanimous verdict); *Commonwealth v. Conner*, 445 Pa. 36, 282 A.2d 23 (1971) (two jurors, who initially stated "guilty of involuntary manslaughter", quickly changed their verdict to "guilty of voluntary manslaughter"; held, initial response was mere inadvertence and did not negate unanimity of voluntary manslaughter verdict); *Commonwealth v. Coleman*, 179 Pa. Super. 1, 115 A.2d 811 (1955), aff'd, 383 Pa. 474, 119 A.2d 261 (1956) (juror made mistake as to certain counts of indictment but promptly corrected the mistake by stating what she actually meant). See also, *Banmiller*, supra; Anno. 25 A.L.R.3d 1149.

■ We think it clear the instant case must fall into the latter category of cases where a subsequent unequivocal assent to the majority vote cures any defect in a prior response. Juror Number One's initial answer was followed immediately by her acknowledgment she was mistaken and her unhesitating correction of her verdict. There is nothing in the record to show the juror disagreed with the majority, *Watson*, or that she was so confused as to require clarification from the court as to her duties and options, *Corbin*.

Rather, the error was inadvertent and the correction was made by the juror herself without any influence from the court or anyone else present. The court thus properly refused counsel's request for further interrogation of the juror and the contention that the verdict was not unanimous is without merit.

■ Finally, appellant argues the court erred in not granting his request for a continuance because of possible prejudice among the panel of veniremen from which appellant's jurors were chosen. A week and one-half before appellant's trial in the instant case, he was convicted in Philadelphia Common Pleas Court by a jury of conspiracy, possessing instruments of crime, and robbery. After the verdict in that prior trial, the judge congratulated the jury and read to them appellant's conviction record for robberies. Prior to trial in the instant case, counsel requested a continuance, opining that the jurors in the prior trial may have gone back to the general pool of veniremen, discussed appellant and his record with their colleagues, and that the jurors in appellant's instant trial were selected from this polluted pool. The court refused the continuance.

The record shows that appellant's contention is speculative at best and wholly lacking in supportive evidence. There is no affirmative showing that the pool of veniremen from which the jurors in appellant's first trial were chosen was the same pool from which the jurors in appellant's second trial were selected.[3] Further, during voir dire, the panel was asked collectively if they knew appellant and none responded. Counsel did not pursue the matter further in his individual voir and we find nothing in the transcript which

3. Jurors at that time were required to serve only two weeks unless, at the conclusion of their time, they were in the midst of a trial. Counsel conceded at the pretrial hearing that he did not know whether the panel of veniremen from which the first jury was selected was still empaneled or had been discharged. Hearing of 10/18/76, p. 42. His motion was based on the conjecture that the panel was still extant and would be used in comprising appellant's upcoming jury trial.

would lend any support to the contention that the panel was tainted from appellant's prior trial.[4]

Judgment of sentence affirmed.

CERCONE, President Judge, concurs in the result.

SPAETH, J., files a dissenting opinion in which HOFFMAN, J., joins.

JACOBS, former President Judge, did not participate in the consideration or decision of this case.

SPAETH, Judge, dissenting:

Appellant asserts that the lower court erred in refusing to dismiss the charges against him because the Commonwealth violated Pa.R.Crim.P. 1100(a)(2), 19 P.S.Appendix (1977).[1]

On March 5, 1976, a complaint was filed against appellant charging him with robbery, burglary, simple assault, and criminal conspiracy. An arrest warrant issued the next day. Appellant, however, was not arrested until August 4, 1976. He was given a preliminary hearing on August 30 and was arraigned on September 13, 1976. On October 15, 1976, a hearing was held on appellant's motion that the victim should not be allowed to testify at trial because he was mentally incompetent. This motion was denied, and defense motions to suppress the victim's identification and for a dismissal of the charges under Rule 1100(f) were heard on

4. This is thus clearly not a case where there is proof that veniremen had participated in a voir dire for prior trials of a defendant, *Commonwealth v. Free*, 214 Pa.Super. 492, 259 A.2d 195 (1969) or were otherwise made aware of a defendant's criminal record, *Commonwealth v. Bobko*, 453 Pa. 475, 309 A.2d 576 (1973); *Commonwealth v. McDaniel*, 217 Pa.Super. 20, 268 A.2d 237 (1970). See also, *Commonwealth v. Dukes*, 460 Pa. 180, 331 A.2d 478 (1975); *Commonwealth v. Rose*, 265 Pa.Super. 159, 401 A.2d 1148 (1979).

1. In addition to arguing that his Rule 1100 rights were violated, appellant argues that the lower court abused its discretion in ruling that the victim was mentally competent to testify, and that the court erred in refusing appellant's motions for a continuance of the trial and for a voir dire of a juror who appeared confused when polled by the court for his vote. Because of my view of the Rule 1100 issue, I do not consider the merits of these arguments.

October 18, 1976 (as well as a motion by the Commonwealth to amend the informations). The lower court also denied these defense motions, and the following day the parties proceeded to empanel the jury. Trial was held on October 20 and 21. Appellant was found guilty of robbery but not guilty on the other charges. Post-verdict motions were duly filed and were dismissed by the lower court. This appeal followed.

When appellant presented his motion for a dismissal of the charges under Rule 1100(f), he argued that the mandatory period for the commencement of his trial began on March 6, the date the arrest warrant issued, and ended on September 6.[2] Because his trial did not commence within that period, he claimed that he was entitled to a discharge unless it was shown that the Commonwealth had exercised due diligence in prosecuting his case. The Commonwealth argued that the mandatory period did not begin until August 4, the date appellant was arrested. Although the lower court did not state explicitly at the hearing why it denied appellant's motion, it appears clear that the court accepted the Commonwealth's argument that the period did not begin until August 4. This ruling was, without doubt, erroneous. "[I]n the situation where a complaint is presented to a court and a warrant issued . . . the mandatory period [under Rule 1100(a)] commences running with the presentation." *Commonwealth v. Mitchell*, 472 Pa. 553, 559, 372 A.2d 826, 829 (1977). In ruling on appellant's post-trial motions, however, the lower court did not rely upon August 4 as the date from which the mandatory period commenced to find that appellant's trial was timely. Instead, the court looked to testimony taken at trial and held that regardless of when the period began to run, appellant was unavailable for trial until the date of his arrest, thus automatically extending the period

2. Pa.R.Crim.P. 1100(a)(2) provides: "Trial in a court case in which a written complaint is filed against the defendant after June 30, 1974 shall commence no later than one hundred eighty (180) days from the date on which the complaint is filed."

One hundred eighty days from March 6 is September 2, not September 6 as appellant asserted at the hearing.

during which the Commonwealth was required to try him.[3] At trial, appellant testified that he knew several days after the incident that a warrant had been issued for his arrest, and that to avoid the authorities he used an assumed name. Appellant told the jury that he was afraid of being arrested not because he was guilty but because he was afraid that he would be convicted on the basis of his prior record. I believe that the lower court erred in relying on testimony taken at trial to hold that appellant's trial commenced within the period prescribed by Rule 1100.

The Supreme Court has held that "the Commonwealth has the burden of proving the requisites of Section (d) in order to avail itself of an exclusion and must do so by a preponderance of the evidence." *Commonwealth v. Mitchell, supra,* 472 Pa. at 564, 372 A.2d at 831. *See also Commonwealth v. Wade,* 475 Pa. 399, 380 A.2d 782 (1977); *Commonwealth v. Clark,* 256 Pa.Super. 456, 390 A.2d 192 (1978); *Commonwealth v. Long,* 258 Pa.Super. 251, 392 A.2d 779 (1978). When a lower court determines that the Commonwealth has met its burden, we will consider on appeal only "the evidence presented by the Commonwealth and so much evidence presented by the defense as, fairly read in the context of the record as a whole, remains uncontradicted." *Commonwealth v. Wade, supra,* 475 Pa. at 403, 380 A.2d at 784. *See also Commonwealth v. Mitchell, supra; Commonwealth v. Clark, supra.*

In the present case, no evidence was presented by either party at the hearing on appellant's motion, to show that trial was delayed because of appellant's unavailability. Thus, the Commonwealth did not sustain its burden of proof at the hearing. Having failed to carry its burden of proof at the hearing, the Commonwealth could not properly incorporate subsequent trial testimony into the hearing record to show that it could have met its burden had it chosen to. A trial is

---

**3.** *See* Pa.R.Crim.P. 1100(d)(1) which provides:

> In determining the period for commencement of trial, there shall be excluded therefrom such period of delay at any stage of the proceedings as results from:
> (1) the unavailability of the defendant or his attorney . . . ..

not designed for the litigation of Rule 1100 issues. Rather, it is the forum used to assess a defendant's criminal liability. A defendant's prior unavailability for trial is unrelated to his guilt or innocence, and a trial judge would be remiss if he allowed the parties to litigate before the jury issues crucial to a proper Rule 1100 determination. Here the parties did not attempt to develop Rule 1100 arguments at trial. As noted above, the evidence that the lower court relied on to find that appellant was unavailable for trial had been introduced by appellant to explain why he used an assumed name when he was arrested and why he did not turn himself in when he learned that a warrant was pending for his arrest. The evidence was not developed by the Commonwealth to show that appellant's efforts to avoid arrest were so successful that he was able to elude the police in spite of their diligent efforts to find him. This difference in purpose for which the evidence was introduced may explain the lower court's incorrect conception of the test that should have been applied in determining whether appellant was unavailable for trial during the months preceding his arrest. The court held that appellant's efforts to elude authorities was the equivalent of his unavailability. Yet, it is well-settled that in order for the Commonwealth to enjoy the benefits of Pa.R.Crim.P. 1100(d)(1), the crucial issue is not whether a defendant has avoided apprehension, but whether the Commonwealth has shown that the defendant's "whereabouts were unknown and that due diligence was utilized by the police in attempting to determine his whereabouts." *Commonwealth v. Mitchell, supra,* 472 Pa. at 564, 372 A.2d at 831. *See also Commonwealth v. Long, supra; Commonwealth v. Kovacs,* 250 Pa.Super. 60, 378 A.2d 455 (1977); *Commonwealth v. Woodson,* 248 Pa.Super. 545, 375 A.2d 375 (1977); *Comment* to Pa.R.Crim.P. 1100. The lower court ignored entirely the issue of due diligence by the police. Appellant in his brief candidly points out that a police detective testified at trial that within two weeks of the incident he tried to serve the arrest warrant on appellant at his home three times without success. *See* Appellant's Brief at 20. But even had the lower court added this

fact to its opinion, it nevertheless would have been in error in considering any evidence taken at trial to find due diligence. The trial testimony by the detective was not subject to cross-examination by appellant on the issue of due diligence. Nor was appellant entitled to follow the detective's testimony with his own proof and argument. For all we know, a full hearing might reveal that the police had solid leads as to appellant's whereabouts, which they failed to pursue. *Cf. Commonwealth v. Clark, supra* ("Once the Commonwealth knows where the defendant is, it then has the duty to act with due diligence in bringing him to trial.")

As the majority notes, however, the consideration of appellant's Rule 1100 claim does not end here. Although the lower court did not consider whether appellant's motion for dismissal of the charges under Rule 1100 was timely, there is no question that we may raise that issue *sua sponte. See Commonwealth v. Martin*, 479 Pa. 609, 613 n.4, 388 A.2d 1361, 1364 n.4 (1978). Rule 1100(f) limits the time within which a defendant may apply for an order dismissing the charges against him to "any time before trial." In determining whether a defendant has made his motion prior to trial, we may refer to the explanatory comments to Rule 1100(f). *Commonwealth v. Lamonna*, 473 Pa. 248, 259, 373 A.2d 1355, 1360 (1977) (concurring opinion by EAGEN, C. J.); *Commonwealth v. Perkins*, 473 Pa. 116, 373 A.2d 1076 (1977); *Commonwealth v. Byrd*, 250 Pa.Super. 250, 378 A.2d 921 (1977); *Commonwealth v. Wharton*, 250 Pa.Super. 25, 378 A.2d 434 (1977). The Comment provides:

> It is not intended that preliminary calendar calls should constitute commencement of a trial. A trial commences when the trial judge determines that the parties are present and directs them to proceed to voir dire, or to opening argument, or to the hearing of any motions which had been reserved for the time of trial, or to the taking of testimony or to some other such first step in the trial.

We have held that if a defendant fails to present a Rule 1100(f) motion before the hearing of motions reserved for the time of trial, he loses his Rule 1100 rights. *Common-*

*wealth v. Weber,* 256 Pa.Super. 249, 253–254, 389 A.2d 1107, 1110 (1978). We have also held that "a hearing on a motion will mark the commencement of trial under Rule 1100 only if (1) the accused is adequately warned that the hearing has been reserved until the time of trial and (2) the hearing actually leads directly into the guilt-determining process." *Commonwealth v. Dozier,* 258 Pa.Super. 367, 371–372, 392 A.2d 837, 840 (1978). *Accord: Commonwealth v. Brown,* 264 Pa.Super. 127, 399 A.2d 699 (1979).

In the present case, the record fails to show that appellant's motions were explicitly reserved for the time of trial. However, because this case arose in Philadelphia, an argument might be made that the hearing on appellant's suppression motion constituted the commencement of trial because of the local rules promulgated by the Philadelphia Court of Common Pleas. Phila.R.Crim.P. 600IV provides:

> Pretrial suppression applications for suppression of identification evidence in major and homicide cases shall be listed for hearing in the same courtroom and on the same date as the major or homicide case is scheduled for trial.

*See also* Phila.R.Crim.P. 605. We have conjectured in the past that "[p]erhaps, under some circumstances, the Commonwealth might persuasively assert that this Rule provides a defendant with adequate notice that trial, for purposes of Rule 1100, will commence with his suppression hearing." *Commonwealth v. Dozier, supra* 258 Pa.Super. at 372, 392 A.2d at 840. Here, however, there is nothing in the record to enable me to say with any certainty that the Rule provided appellant with such notice. Accordingly, I cannot deem that appellant's Rule 1100(f) motion was untimely.[4]

Finally, as the majority notes, appellant's motion was presented orally to the court. Pa.R.Crim.P. 1100(f) implies

---

4. Of course, appellant's motion was not untimely because it did not comport with Pa.R.Crim.P. 305, which required, before its amendment in 1977, that pre-trial applications for relief be submitted no later than ten days prior to trial. The requirement of Pa.R.Crim.P. 305 was "implicitly superseded for purposes of Rule 1100 by section (f) of the latter rule." *Commonwealth v. Lamonna, supra,* 473 Pa. at 255 n.8, 373 A.2d at 1358 n.8.

that motions to dismiss under the Rule should be in writing. *See also* Pa.R.Crim.P. 306, which requires all pre-trial motions to be in writing. This court has split in the past over the question of whether a defendant may preserve his Rule 1100 rights through an oral motion. *See Commonwealth v. Webb*, 254 Pa.Super. 429, 386 A.2d 25 (court split 3–3). To date, the Supreme Court has yet to resolve the issue. *See Commonwealth v. Martin, supra* 479 Pa. at 613 n. 3, 388 A.2d at 1363 n.3. I believe, however, that under the circumstances of this case, appellant preserved his rights by raising his motion orally before the commencement of trial. The purpose of requiring a written application is to inform the Commonwealth and the court of the specific contentions a defendant intends to raise so that a focused response and decision may follow. That purpose was not frustrated in the present case by the oral nature of appellant's motion. Appellant argued that the mandatory period under the Rule began on March 6, and that his trial was untimely unless it was shown that the Commonwealth had been diligent in bringing him to trial. The Commonwealth responded with the plausible, but since discredited, argument that the mandatory period did not begin until the date of appellant's arrest and preliminary arraignment. The lower court was persuaded by the Commonwealth's argument, and evidently believed that the issue had been framed and argued clearly enough so that it could decide the issue itself instead of referring appellant's motion to the Calendar Judge as required under the local rules of the Philadelphia Court of Common Pleas.[5]

5. Phila.R.Crim.P. 620 provides:
 (A) Rule 1100 petitions for Felony Jury and Homicide cases are to be filed in the appropriate calendar room and will be listed for hearings by the Calendar Judge. Where the defendant presents an oral motion for dismissal before the Trial Judge, the matter shall be referred immediately to the Calendar Judge for disposition.

 \*　　\*　　\*　　\*　　\*　　\*

 (E) Hearings on defense petitions for dismissal or for Commonwealth petitions for extensions of time under Rule 1100 or Rule 6013 are to be held only by the appropriate Calendar Judges or by a Judge specifically designated for such purpose.

Since the purpose of a written application has been satisfied in the present case, it is not apparent to me why we should hold that appellant waived his Rule 1100 rights by raising his motion orally, rather than holding that the Commonwealth waived its rights under the Rule by failing to object to the oral nature of appellant's motion at the time it was made. Had the Commonwealth made a timely objection, appellant would have had the opportunity to perfect his application before the commencement of trial. We would work an injustice by allowing the Commonwealth to assert after trial, that is, after appellant can no longer cure the defect, that appellant waived his rights by presenting his motion orally when the Commonwealth consented to the form of the motion at the time it was made. I should not allow the Commonwealth to lull defendants into believing that they have preserved their rights except in situations where the integrity of our own judicial processes has been infringed by non-compliance with the rules. Here appellant's motion and the subsequent argument by the parties were fully transcribed for the record. The record shows that the Rule 1100 issue was clearly framed, argued, and decided by the lower court. The Commonwealth had the chance to present a proper objection at the time appellant made his motion. It failed to do so, and instead argued against the motion on the merits. In these circumstances I should not hold *sua sponte* that appellant's Rule 1100 rights have been forfeited because appellant made his motion orally rather than in writing. *See Commonwealth v. Webb, supra* (HOFFMAN, J., Opinion in Support of Reversal).

Because the lower court concluded at the hearing that the period in Rule 1100(a)(2) did not commence until August 4, the Commonwealth and the lower court did not pursue the inquiry into whether the Commonwealth used due diligence in bringing appellant to trial. Since we are without a fully developed record on this issue, I should vacate appellant's judgment of sentence and remand the case for an evidentiary hearing on appellant's Rule 1100 claim.

HOFFMAN, J., joins in this dissenting opinion.